**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL GRANT** | : | **CIVIL ACTION** |
| Petitioner, | | |
| V. | : | |
| **KEVIN KAUFFMAN et al.,** | : | **No. 19-6132** |
| Respondents. | | |

**RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS**

*TABLE OF CONTENTS*

I.   **INTRODUCTION** ....................................................................2
II.  **FACTUAL BACKGROUND** ..................................................2
III. **PROCEDURAL BACKGROUND** ...........................................5
IV.  **DISCUSSION** .......................................................................7

    A. **Standards Governing Petitioner's Claims for Relief** .................8

        1. Standards Governing Exhaustion and Default. .........................8
        2. Requirements for Relief under Section 2254(d). .....................10
        3. Deferential Ineffectiveness Standard. ....................................12

    B. **Petitioner's Claims Do Not Entitle Him to Relief.** ..........................16

        1. Petitioner's Brady Claim Is Meritless.....................................13
        2. Petitioner's Ineffectiveness Claims Relating to Alleged Police Misconduct Are Defaulted and Meritless. ..................................16
        3. Petitioner's Ineffectiveness Claims Relating to Manh Doan's Identification Evidence Are Defaulted and Meritless. ..............19
        4. Petitioner's Claim that the Trial Court Erred in Denying His Lineup Request Is Defaulted and Noncognizable. .................21
        5. Petitioner's Ineffectiveness Claims Relating to the Admission of the 911 Tapes Are Defaulted and Meritless. .....................22
        6. Petitioner's Claim of Appellate Counsel's Ineffectiveness for Failing to Allege Trial Counsel's Ineffectiveness Regarding the Ballistic Examiner's Testimony Is Defaulted and Meritless. ................................23
        7. Petitioner's Claim that Trial Counsel Was Ineffective for Failing to Request Jury Instructions Is Defaulted and Meritless. ...........24
        8. Petitioner's Claim that Trial Counsel Was Ineffective for Failing to Request a Mistrial Is Defaulted and Meritless. .......................26
        9. Petitioner's Claim That Trial Counsel Was Ineffective for Failing to File a Post-Sentence Motion Challenging the Discretionary Aspects of Sentencing Is Defaulted and Meritless. ...................27

    C. **A Certificate of Appealability Should Not Issue.** ............................28

V.   **CONCLUSION** ......................................................... 29

## I.    INTRODUCTION

Petitioner is a Pennsylvania state prisoner who was convicted of attempted murder, aggravated assault, robbery, and related offenses in the Philadelphia Court of Common Pleas in 2008 (Docket Nos. CP-51-CR-0003425-2007 and 0003426-2007). He was sentenced to an aggregate term of 25 to 50 years' imprisonment. Before this Court is his application for federal habeas relief pursuant to 28 U.S.C. § 2254. Because his claims are procedurally defaulted and/or meritless, respondents respectfully request that this Court deny the petition with prejudice, without a hearing, and without the issuance of a certificate of appealability.

## II.    FACTUAL BACKGROUND

At approximately 6:45 p.m. on December 29, 2006, Manh Doan was driving his co-worker's borrowed Mercury Marquis, which he was about to return, in the area of 2800 Bittern Place in Philadelphia. He parked the car and got out to return the keys. As he did so, petitioner and his co-defendant, Antwaun White, jumped in front of Mr. Doan. The two men wore puffy jackets and black ski masks. They pointed guns at him and demanded his money and car keys.

Mr. Doan pretended not to understand English. Petitioner angrily pulled up his ski mask and grabbed Mr. Doan by the jacket. Frightened, Mr. Doan handed over the four dollars that he had in his pockets and the wrong car key. When Mr. White was unable to open the car using that key, petitioner told Mr. Doan "Give me the right keys or I am going to shoot you." Mr. Doan handed over the keys to the car. Petitioner got into the passenger seat, and Mr. White drove the two of them away.

Philadelphia Police Officer John Zirilli, who was off duty at the time, was across the street taking out the trash at a friend's house when he saw Mr. Doan and the two assailants. He knew Mr. Doan from the neighborhood. Officer Zirilli saw Mr. Doan with his hand up, but

thought that he was merely waving hello, and went back into the house. A few minutes later, Mr. Doan banged on the door and told Officer Zirilli that he had just been robbed.

Another off-duty police officer, Officer Michael Williams, had been driving past the scene in his personal car when he observed Mr. Doan speaking to two men wearing ski masks and puffy jackets on an unseasonably warm day. Officer Williams thought this was peculiar and, after the two masked men had driven off, pulled over to ask Mr. Doan whether everything was okay. Mr. Doan informed Officer Williams that he had just been robbed.

Officer Williams immediately pursued the stolen car while broadcasting information to police dispatchers. At 65th Street and Eastwick Avenue, Officer Williams caught up to petitioner and his co-conspirator. Petitioner, realizing that they were being pursued, jumped out of the stolen car, pointed his gun at Officer Williams, and began firing. Officer Williams ducked behind his dashboard, and petitioner and his co-conspirator sped away. Officer Williams later determined that his car had been hit by four bullets.

The chase continued throughout Philadelphia. At one point, the driver of the stolen car shot at Officer Williams. Twice during the pursuit, Officer Williams was able to get close enough to fire back.

At 6th and Ritner Streets, petitioner and his co-conspirator reached a park. They drove onto the sidewalk, got out of the car, removed their jackets, and fled. A police helicopter had been following them, and kept its spotlight on Antwaun White as he ran. Because the light remained focused on Mr. White, police were able to chase him down and apprehended him on the other side of the park. Petitioner, however, ducked behind some cars and escaped in the dark.

Mr. Doan was brought to the scene and identified Mr. White as one of the two men who had robbed him. Although police detained other men in the vicinity who fit petitioner's description, Mr. Doan declined to identify any of them as the other assailant.

Petitioner had been injured by a bullet that struck his arm during his flight. He sought treatment at the Hospital of the University of Pennsylvania. Hospital personnel reported the injury to police. Officer Christopher Campbell went to the hospital to interview petitioner about his injury. Petitioner told Officer Campbell that he had been driving from his West Philadelphia home to South Philadelphia and decided to stop at a Chinese take-out restaurant at 49th and Paschall Streets along the way. He claimed that when he approached the store, he saw some unknown men that "didn't look right" and turned around to leave. As he was walking back to his car, he heard gunshots and felt a bullet pierce his arm. He claimed that a bystander had driven him to the hospital.

Officer Campbell went to the location that petitioner had described to see whether he could locate blood, shell casings, or any other evidence of a shooting. He found none. He also did not find petitioner's car, supposedly abandoned at the scene. Officer Campbell checked with police radio dispatchers to see whether anyone had reported gunshots being fired near 49th and Paschall Streets. Dispatchers informed him that no such call had been made. Officer Campbell reported this information to Southwest Detectives.

Because Officer Williams had reported firing at a fleeing carjacker who escaped, and because petitioner had appeared at a hospital emergency room a few hours later with a gunshot wound and an apparently false explanation for that injury, detectives assembled a photo array including petitioner's photo and took it to the victim's home. Mr. Doan identified petitioner as the second carjacker who had robbed him at gunpoint. Petitioner was arrested and arraigned at the hospital.

Ballistics evidence determined that two different weapons were fired during the various gunfire exchanges. One of them was Officer Williams's service weapon, a Glock handgun. The other was a 9 millimeter handgun, which was not recovered.

Prior to trial, petitioner litigated a motion to suppress Mr. Doan's identification of him as one of the perpetrators. After a two-day hearing, the motion was denied.

Sharee Bostic and Lawranda Casey testified to being "straw purchasers" of firearms on petitioner's behalf. Both women testified that they had purchased 9 millimeter handguns – the same caliber of handgun used in the commission of petitioner's crimes – at petitioner's request. Ms. Bostic testified that petitioner gave her the money for the purchase, that she falsely registered herself as the handgun's owner, and that she then gave him the 9 millimeter, which she never saw again. She also testified that petitioner told her that he had been shot by police. Ms. Casey testified that she purchased a 9 millimeter handgun for herself at petitioner's instigation, but that petitioner stole it from her, later admitted that he took it, and never returned the gun.

## III. PROCEDURAL BACKGROUND

Petitioner was tried by a jury sitting before the Honorable Sandy L.V. Byrd of the Philadelphia Court of Common Pleas. On September 23, 2008, the jury convicted petitioner of attempted murder, aggravated assault, robbery, robbery of a motor vehicle, criminal conspiracy, carrying a firearm without a license, carrying a firearm on the public streets of Philadelphia, and possession of an instrument of crime. The trial court imposed an aggregate sentence of 25 to 50 years' incarceration. Petitioner did not file a post-sentence motion.

He filed a timely notice of appeal to the Pennsylvania Superior Court, raising three claims: (1) that the trial court erred in denying his motion to suppress Manh Doan's identification of him as one of the two robbers; (2) that the trial court erred in admitting recordings of the 911 tapes; and (3) that the trial court erred in permitting testimony concerning petitioner's straw purchases of firearms.

The Superior Court rejected all three claims as meritless and affirmed the judgment of sentence. <u>Commonwealth v. Grant</u>, 114 EDA 2009 (Pa. Super. 2009) (attached as Exhibit A). The Pennsylvania Supreme Court declined to grant discretionary review.

On November 30, 2011, petitioner filed a *pro se* petition for collateral relief pursuant to Pennsylvania's Post-Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 <u>et.</u> <u>seq</u>.

New counsel was appointed to represent him and filed an amended PCRA petition, followed by supplemental PCRA petitions, raising the following ten claims: (1) that the prosecution violated <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), by failing to disclose the victim's criminal record; (2) that trial counsel was ineffective for failing to file a motion to dismiss the case as violative of petitioner's speedy trial rights; (3) that trial and/or appellate counsel were ineffective for failing to raise issues of police misconduct; (4) that trial and/or appellate counsel were ineffective for failing to adequately litigate the motion to suppress Mr. Doan's identification evidence; (5) that trial counsel was ineffective for failing to adequately investigate petitioner's alibi claim; (6) that trial and/or appellate counsel were ineffective for failing to adequately litigate a motion to suppress the 911 tapes; (7) that appellate counsel was ineffective for failing to allege that trial counsel was ineffective for not objecting to the prosecution's ballistics evidence; (8) that trial counsel was ineffective for not requesting certain jury instructions; (9) that trial counsel was ineffective for not objecting to, and/or requesting a mistrial on the basis of, alleged prosecutorial misconduct in closing argument; and (10) that trial counsel was ineffective for failing to file a post-sentence motion challenging petitioner's sentence as excessive.

The PCRA court dismissed the petition. On appeal, the Superior Court determined that all of petitioner's claims were waived and/or meritless, and affirmed the PCRA court's ruling.

Commonwealth v. Grant, 2019 WL 1988665 (Pa. Super. 2019) (attached as Exhibit B). The Pennsylvania Supreme Court declined to grant discretionary review.

On December 20, 2019, petitioner filed the instant petition for a writ of habeas corpus in federal court. In it, he raises the following claims: (1) that the prosecution violated Brady v. Maryland by failing to disclose the victim's criminal record; (2) that trial and/or appellate counsel were ineffective for failing to raise various allegations of police misconduct; (3) that trial and/or appellate counsel were ineffective for failing to adequately litigate petitioner's motion to suppress Mr. Doan's identification; (4) that the trial court erred in not granting trial counsel's request for a lineup; (5) that trial and/or appellate counsel were ineffective for failing to challenge the introduction of the 911 tapes at trial; (6) that appellate counsel was ineffective for failing to allege on appeal that trial counsel was ineffective for failing to object to the prosecution's purported failure to disclose the results of the ballistics examinations; (7) that trial counsel was ineffective for failing to request adequate jury instructions; (8) that trial counsel was ineffective for failing to object to alleged prosecutorial misconduct during closing arguments; and (9) that trial counsel was ineffective for failing to file a post-sentence motion challenging petitioner's sentence as excessive.

All of petitioner's claims are procedurally defaulted and/or were reasonably rejected by the state courts as meritless on grounds supported by the record, compatible with relevant federal law, and entitled to deference on habeas review. None of them warrants habeas relief.

## IV.  DISCUSSION

All of petitioner's claims are procedurally defaulted and/or meritless. Because petitioner has failed to establish any entitlement to federal habeas relief, respondents respectfully request that this Court dismiss the petition with prejudice, without a hearing, and without issuing a certificate of appealability.

**A. Standards Governing Petitioner's Claims for Relief**

    1.    <u>Standards Governing Exhaustion and Default</u>

A state prisoner may only obtain federal habeas review of a claim that his state confinement violates federal law after first exhausting all remedies available in the state courts. 28 U.S.C. § 2254(b)(1)(A); <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999). To satisfy the exhaustion requirement, a petitioner must "fairly present" his claims to the state courts in the first instance, to give them a meaningful opportunity to correct alleged constitutional violations. <u>Duncan v. Henry</u>, 513 U.S. 364, 365 (1995). Fair presentation requires that the same claim — *i.e.*, the same legal theory applied to the same facts — have been presented at all available levels of the state judicial system. <u>Anderson v. Harless</u>, 459 U.S. 4, 7 (1982); <u>Lines v. Larkins</u>, 208 F.3d 153, 159 (3d Cir. 2000). <u>See</u> <u>also</u> <u>O'Sullivan</u>, 526 U.S. at 846 ("fair presentation" requires that prisoner present claim through "one complete round of the State's established appellate review process"). If a state prisoner has a right under state law that he may still raise "by any available procedure," he shall not be deemed to have satisfied the exhaustion requirement and is thus not entitled to federal habeas review of that claim. 28 U.S.C. § 2254(c). The petitioner bears the burden of proving that he has exhausted available remedies as to each claim. <u>O'Sullivan</u>, at 842; <u>Toulson v. Beyer</u>, 987 F.2d 984, 987 (3d Cir. 1993).

The Third Circuit has explained that "[e]xhaustion of state remedies is not a merely a formality" and instead serves important interests of comity and federalism. <u>O'Halloran v. Ryan</u>, 835 F.2d 506, 509 (3d Cir. 1987); <u>O'Sullivan</u>, 526 U.S. at 844-45. <u>See</u> <u>also</u> <u>Landano v. Rafferty</u>, 897 F.2d 661, 668 (3d Cir. 1990) (exhaustion "expresses respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions" by recognizing that "state courts, no less than federal courts, are bound to safeguard the constitutional rights of state

criminal defendants"); Rose v. Lundy, 455 U.S. 509, 518 (1982) (exhaustion protects state courts' role in enforcing federal law and prevents disruption of state proceedings).

A claim becomes procedurally defaulted where it has not been "fairly presented" to the state courts and state remedies are no longer available. Procedural default protects the integrity of the federal exhaustion rule because prisoners would otherwise have a strong incentive to ignore state procedural rules and thus circumvent the exhaustion requirement. O'Sullivan, 526 U.S. at 848.

Alternately, even where there has been exhaustion, "a federal court may not review federal claims that were procedurally defaulted in state court – that is, claims that the state court denied based on an adequate and independent state procedural rule." Davila v. Davis, 137 S.Ct. 2058, 2064 (2017). "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address the merits of those claims in the first instance." Id. (quotation marks omitted).

Review of procedurally defaulted claims is permitted only in very limited circumstances, where the prisoner shows "cause for the default and actual prejudice" or that the federal court's failure to consider the claim will result in a "fundamental miscarriage of justice." Coleman, 501 U.S. at 749. "Cause" for procedural default exists if the petitioner "can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). A petitioner can only prove prejudice, in turn, by demonstrating that the errors at trial "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Id., 477 U.S. at 494 (internal quotations and citations omitted; emphasis in original). To establish a "miscarriage of justice," a petitioner must present new evidence of his actual innocence. Schlup v. Delo, 513 U.S. 298, 321

(1995). <u>See</u> <u>also</u> <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (to prove "actual innocence" to excuse procedural default, petitioner must produce "reliable evidence" not presented at trial showing that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence"); <u>Schlup</u>, 513 U.S. at 324, 329 ("reliable evidence" is "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence").

      2.      <u>Requirements for Relief under Section 2254(d)</u>

      The federal habeas statute limits a federal court's authority to grant habeas relief when a state court has adjudicated a petitioner's federal claim on the merits. 28 U.S.C. § 2254(d). Under Section 2254(d), a state court's resolution of a constitutional issue may not be disturbed unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." <u>Id.</u> § 2254(d)(2). A federal habeas court thus may not perform a "first-order," or <i>de novo</i>, review of the merits of claims and instead may only conduct a "second-order" evaluation of the underlying reasonableness of the state courts' treatment of such claims in light of Supreme Court precedent or the factual record.

      Under Section 2254(d)(1), a writ for habeas corpus relief may issue only under the two narrow circumstances set forth in what have come to be known as the "contrary to" and "unreasonable application" clauses of Section 2254(d)(1), both of which require great deference to state court decisions. 28 U.S.C. § 2254(d)(1). <u>See</u> <u>also</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000) (both "contrary to" and "unreasonable application" clauses require more than mere finding that state court's decision was incorrect).

      The "contrary to" clause entitles a petitioner to relief only if the state court decision "was contrary to, or involved an unreasonable application of" United States Supreme Court precedent.

28 U.S.C. § 2254(d)(1). See also Harrington v. Richter, 131 S. Ct. 770, 785 (2011) (federal relief unavailable unless state court decision was "contrary to" clearly established Supreme Court holdings on federal law); Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 890 (3d Cir. 1999) (*en banc*) (federal habeas courts may consider decisions of inferior federal courts but "may not grant habeas corpus relief based on the state court's failure to adhere to the precedent of a lower federal court on an issue that the Supreme Court has not addressed); Williams, 529 U.S. at 412 (clearly established federal law is limited to Supreme Court case law). The Supreme Court has emphasized that the state court must have "arrived at a conclusion *opposite* to that reached by this Court on a question of law" or decided a case differently on a set of "materially indistinguishable" facts. Williams at 405 (emphasis added). The Court has noted that most cases will *not* fit into this narrow category, which is limited to the direct and unequivocal contravention of Supreme Court authority. Id. at 406. This is a "difficult to meet" and "highly deferential" standard for evaluating state-court rulings, "which demands that state court rulings be given the benefit of the doubt." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011) (internal quotations omitted). See also Matteo, 171 F.3d 877 at 888 (under "contrary to" clause, "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's," as he must instead establish "that Supreme Court precedent *requires* the contrary outcome") (emphasis in original).

Similarly, under the "unreasonable application" clause of Section 2254(d)(1), habeas relief is appropriate only if the state court application of United States Supreme Court precedent is objectively "unreasonable." 28 U.S.C. § 2254(d)(1). A federal habeas court "may not issue a writ simply because that court concludes in its judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." Williams, 529 U.S. at 411 (emphasis added). An "unreasonable application of" those holdings must be "objectively

unreasonable," not merely wrong; even "clear error" will not suffice. <u>White v. Woodall</u>, 134 S.Ct. 1697, 1702 (2014), <u>quoting</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75-76 (2003). In other words, petitioner must show that the state court's adjudication of the claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Harrington</u>, 131 S.Ct. at 786-787.

Section 2254(d)(2), in turn, sharply restricts the circumstances in which a federal habeas court may grant relief based on a state court's factual determinations. The petitioner must show that the state court verdict rested on an unreasonable determination of the evidence and that a reasonable factfinder could not have reached a similar decision. <u>Campbell v. Vaughn</u>, 209 F.3d 280, 291 (3d Cir. 2000). A court must presume that the state court's factual findings are correct, and it is the petitioner's burden to overcome this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). <u>See</u> <u>also</u> <u>Marshall v. Lonberger</u>, 459 U.S. 422, 435 (1983) (requiring respect for state court's factual findings and "inferences fairly deducible from those facts").

In this manner, Section 2254(d)(1) requires that a federal habeas court confine its review to the reasonableness of a state court decision in light of Supreme Court precedent, and Section 2254(d)(2) mandates that federal courts defer to state courts' factual determinations.

Finally, there is an additional, independent requirement on federal habeas review:  for a petitioner to qualify for relief, the alleged constitutional violation must have had a "substantial and injurious effect" on the outcome of the trial or proceeding. <u>Brecht v. Abramson</u>, 507 U.S. 619, 637 (1993). <u>Accord</u> <u>Fry v. Pliler</u>, 551 U.S. 112, 121 (2007).

    3.    <u>Deferential Ineffectiveness Standard</u>

The "clearly established federal law" to be examined under 28 U.S.C. § 2254(d) (1) for ineffective assistance of counsel claims is <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>Williams v. Taylor</u>, 529 U.S. 362 (2000). Under <u>Strickland</u>, a petitioner claiming ineffective

assistance of counsel must overcome the presumption that counsel was effective and provide evidence that (1) counsel performed deficiently; and (2) as a result of that performance, the defendant was prejudiced. Strickland, 466 U.S. at 687; Outten v. Kearney, 464 F.3d 401, 414 (3d Cir. 2006). Even if counsel's conduct was deficient, he will not be deemed ineffective unless his behavior prejudiced his client. Strickland, 466 U.S. at 692; Outten, 464 F.3d at 414.

To show prejudice, the petitioner must demonstrate that "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; accord Outten, 464 F.3d at 414. The likelihood of a different result must be substantial, not just conceivable. Harrington v. Richter, 131 S.Ct. 770, 792 (2011). It does not matter which prong a court evaluates first; failure to show either defeats the claim. Strickland, 466 U.S. at 697.

"Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 130 S.Ct. 1473, 1484 (2010). "Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential [...] and when the two apply in tandem, review is doubly so." Richter, 131 S.Ct. at 788.

**B.     Petitioner's Claims Do Not Entitle Him to Relief.**

Petitioner's application for federal habeas relief fails to advance any legitimate basis for the issuance of the writ. All of his claims are procedurally defaulted and/or meritless. None warrants habeas relief.

### 1.     Petitioner's Brady Claim Is Meritless.

Petitioner's first claim is that the prosecution violated Brady by failing to disclose that Manh Doan, the victim of petitioner's gunpoint robbery and carjacking, had prior convictions for

federal offenses that qualified as *crimen falsi*, and that could have been used to impeach him at trial. This claim was reasonably rejected by the state courts, and cannot entitle petitioner to relief.

Brady holds that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. "[E]vidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Strickler v. Greene, 527 U.S. 263, 280 (1999) (quotation marks omitted).

Here, the factual basis underlying petitioner's claim is that Manh Doan, under the name "Manh Huu Doan a/k/a Bruce Doan," pled guilty in 2000 to federal charges of bank fraud and counterfeit checks. Both the prosecution and trial counsel were unaware of this information at the time of trial. PCRA counsel was able to obtain the information independently. Petitioner argues that the prosecution was obligated to procure this information and provide it to defense counsel (Petitioner's Supporting Memorandum, 11).

The Superior Court rejected petitioner's Brady claim on the grounds that petitioner "could not prove that the Commonwealth knew or possessed any impeachment evidence, and he cannot show that there is a reasonable probability the outcome of the trial would have been different or that he received an unfair trial." Grant, 2019 WL 1988665 at *6. At a minimum, this ruling was reasonably grounded on the facts of record and not violative of binding United States Supreme Court precedents. Thus, the state court's ruling should be deferred to in federal court.

The Commonwealth may not be deemed to have suppressed Mr. Doan's federal convictions. The Commonwealth did not possess this information. Rather, it was within the control of the federal government, which played no role in the prosecution of this case. See Gibson v. Secretary Pennsylvania Department of Corrections, 718 Fed. Appx. 126, 130 (3d Cir.

2017) ("<u>Brady</u> and its progeny do not . . . impose a duty upon the prosecutor to uncover and disclose information possessed by other government agencies that have no involvement in the investigation or prosecution at issue") (quotation marks omitted).

Moreover, <u>Brady</u>'s materiality requirement is not satisfied here. Manh Doan was not the only witness to identify petitioner. Officer Zirilli was across the street when petitioner and his accomplice robbed Mr. Doan, and had an unobstructed view of petitioner's face when petitioner lifted his ski mask to threaten Mr. Doan. Officer Zirilli identified petitioner consistently at a line-up and at trial (N.T. 9/18/08, 119-127; 9/22/08, 107). Petitioner's identity as one of the fleeing carjackers whom Officer Williams shot at was corroborated by the gunshot injury that he sustained to his arm, and the false explanation that petitioner gave Officer Campbell while being treated at the Hospital of the University of Pennsylvania.

Mr. Doan's prior criminal convictions did not actually undermine his ability to observe or understand events, or to accurately identify petitioner as his assailant. Nor did these convictions give him any motive to falsely incriminate petitioner as opposed to some other suspect, or to fabricate the attack itself. Under the totality of these circumstances, it is not reasonably probable that the impeachment of Mr. Doan with his unrelated white-collar federal crimes from years earlier would have led to a different outcome at trial.

Petitioner has identified no binding United States Supreme Court precedents that the state court's ruling was contrary to, or an unreasonable application of, and he has identified no errors in the state court's recitation of the facts. Accordingly, there is no reason to disturb the state court's disposition of this claim.[1]

---

[1] Petitioner also argues that trial counsel was ineffective for failing to make any investigation into Mr. Doan's criminal history (<u>Id.</u>, 17). For the same reasons Mr. Doan's criminal history was not material under <u>Brady</u>, any alleged ineffectiveness on the part of counsel did not prejudice petitioner as required for relief under <u>Strickland</u>.

2. Petitioner's Claim That Trial and Appellate Counsel Were Ineffective for Failing to Raise Various Allegations of Police Misconduct Is Procedurally Defaulted and Meritless.

Petitioner next alleges that trial and/or appellate counsel were constitutionally ineffective for failing to raise various allegations of police misconduct. When petitioner raised this claim on PCRA appeal, the Superior Court ruled that it was waived because he failed to adequately develop it in his brief in accordance with Pa.R.A.P. 2119(a). See Grant, 2019 WL 1988665 at *8. The state court's finding of waiver was an independent and adequate state procedural ruling giving rise to a procedural default for purposes of federal habeas review. See Bernard v. Overmyer, 2016 WL 3268858 at *6 n.5 (W.D. Pa. 2016) ("Petitioner's claim is procedurally defaulted because Pa. R.A.P.'s 2119's waiver rule is adequate to support the state court's judgment and independent of federal issues") (collecting cases).

Petitioner acknowledges this default (Petitioner's Supporting Memorandum, 19), but argues that he should be entitled to excuse it under Martinez v. Ryan, 566 U.S. 1, 9 (2012) ("Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial"). However, Martinez, by its express terms, "does not concern attorney errors in other kinds of proceedings" besides initial-review collateral proceedings, "including appeals from initial-review collateral proceedings." Id. at 16. Thus, Martinez cannot excuse counsel's failure to adequately brief the claim on PCRA appeal. Moreover, to the extent petitioner is challenging the performance of appellate counsel, the Supreme Court has ruled that Martinez does not extend to such claims. See Davila, 137 S.Ct. at 2065 ("Petitioner asks us to extend Martinez to allow a federal court to hear a substantial, but procedurally defaulted, claim of ineffective assistance of appellate counsel when a prisoner's state postconviction counsel provides ineffective assistance by failing to raise that claim. We decline to do so").

In addition to being inexcusably defaulted, petitioner's claim also fails on the merits. He has not established any police misconduct, and counsel were not ineffective for not raising baseless claims to the contrary. His accusations of police wrongdoing rest on mischaracterizations of the record and/or attempts to draw illogical inferences.

For example, he alleges that "Officer Roman testified that Petitioner was arrested at the scene" (Petitioner's Supporting Memorandum, 22), but this assertion is unsupported by the record. Officer Roman testified that "a male who was later identified as *Antwuan White*" – that is, petitioner's co-conspirator – was detained at the scene and was positively identified by Manh Doan as one of the robbers at that time (N.T. 9/18/08, 144; emphasis added). Officer Roman then began to recount what Mr. Doan had said concerning the clothing that "the Defendant *at that location*," namely Mr. White, was wearing (Id., emphasis added). Trial counsel objected to this hearsay testimony, and the objection was sustained. There was no impropriety anywhere in this testimony, much less anything that might rise to the level of police misconduct. Moreover, because Officer Roman's testimony clearly pertained to Antwuan White, and not to petitioner, it was irrelevant to petitioner in any event.

Petitioner also asserts that Officer Jaconi, who dusted the stolen Mercury Marquis for fingerprints but did not retrieve any usable prints, somehow committed police misconduct because "different parameters are necessary for using a fingerprint as exculpatory evidence than [sic] inculpatory evidence" (Petition, 9). This argument is illogical. Officer Jaconi dusted the Mercury Marquis for fingerprints, but obtained only "overlays" and "smudges" that were so unclear and indistinct that they were useless for forensic examination (N.T. 9/22/08, 54-56). Thus, no fingerprint evidence incriminated petitioner, and this was made plain on the record.

It is unclear why petitioner imagines that any additional analysis of this inconclusive fingerprint evidence would have *exculpated* him, given that the best-case scenario – which was

precisely what was established at trial – was that no fingerprint evidence could connect him to the car. It is further unclear why he imagines Officer Jaconi's decision not to submit indecipherable smudges for a fruitless analysis amounted to police misconduct.

Finally, petitioner asserts that "[w]ithout the gunshot residue tests on the jacket that Petitioner was wearing while shot, there was no way to prove that he had not fired a weapon; without stippling tests where the bullet entered his jacket, he could not show the circumstances of his own shooting were considerable [sic] different than the incident Officer Williams described" (Supporting Memorandum, 22). However, the black puffy jacket that petitioner wore during the robbery and his subsequent flight was never recovered. Only Antwuan White's jacket was found by police (N.T. 9/22/08, 170). The reason that police were unable to conduct any gunshot residue or stippling tests on petitioner's jacket was because petitioner discarded the jacket that he was wearing at the time of the robbery before he was apprehended, and police never recovered that garment. Accordingly, it is evident that petitioner's claim of police misconduct for failing to conduct forensic examinations on the jacket that *he himself ensured* would never be found is, on its face, meritless.

Similarly, petitioner's hands could not be swabbed for gunshot residue because he fled from police and lied about the circumstances under which he was shot. By the time police encountered petitioner at the hospital, there was no use swabbing his hands for gunshot residue, since his hand and arm had already been cleaned in the course of his medical treatment and hours had passed since the shots were fired (N.T. 9/19/08, 168). Again, it was petitioner's own actions, and not any police negligence or misconduct, that prevented police from conducting the examination that he now argues they should have performed.

As the record does not support any of petitioner's allegations of police misconduct, neither trial nor appellate counsel could have been ineffective for failing to raise such claims, and

petitioner cannot have been prejudiced by their absence. This defaulted and baseless claim does not entitle petitioner to relief.

3.        Petitioner's Claim That Trial and/or Appellate Counsel Were Ineffective in Attempting to Suppress Manh Doan's Identification Evidence Is <u>Procedurally Defaulted and Meritless.</u>

Petitioner next alleges that "[m]otion and appellate counsel were ineffective while arguing for suppression of the in-court and out-of-court identification by the Petitioner [sic], as a result of failure to investigate" (Petition, 10). The state court ruled that this claim was waived because petitioner failed to adequately develop it in his brief as required by Pa.R.A.P. 2119(a). <u>See</u> <u>Grant</u>, 2019 WL 1988665 at *8. The state court's waiver ruling was an independent and adequate state procedural ruling, rendering this claim procedurally defaulted in federal court. <u>See</u> <u>Bernard,</u> 2016 WL 3268858 at *6 n.5.

It is also meritless. The gist of petitioner's complaint is that, although he was not formally arrested while he was in the hospital, the circumstances suggested that he was not free to leave until the police completed their investigative detention. In his view, "[b]ecause this arrest [of petitioner in the hospital] occurred prior to the photo array identification, Petitioner was entitled to have counsel present during the photo array identification" (Petitioner's Supporting Memorandum, 31). He alleges that trial counsel was ineffective for failing to "present a cogent argument that Petitioner was the subject of a false arrest and should have had counsel at the photo array identification" (<u>Id.</u>, 32).

However, the record reflects that trial counsel *did* advance this argument at the pretrial suppression motion (N.T. 10/9/08, 8-9), and that the suppression court clearly understood the argument: "His [trial counsel's] argument is, if I understand it, that the defendant is entitled to have counsel if he's under arrest at the time a photo array is shown, and [trial counsel] maintains that [petitioner] was, in fact, under arrest at the time the photo was shown to the complainant,

and, therefore, unless he had counsel, the presentation of a photo spread was not constitutional" (Id., 10-11). Trial counsel confirmed that this was, indeed, the argument that the defense wished to advance, and the hearing proceeded.

During the suppression hearing, Officer Campbell testified that he encountered petitioner at the Hospital of the University of Pennsylvania, where petitioner was being treated for a gunshot wound and was about to be admitted: "When I was there, his wounds had been cleaned and dressed already. He was basically waiting for the police [to investigate the gunshot wound], and then the hospital was going to send him to a room because he was going to be admitted" (N.T. 10/9/08, 36-37). Officer Campbell took a statement from petitioner about the alleged circumstances of his shooting, attempted to verify that statement, and quickly determined that petitioner was lying about how he had gotten shot (Id., 31-39). Officer Campbell did not arrest petitioner, and while he was investigating, no other police officer was watching over petitioner (Id., 33, 36). Although Officer Campbell did fill out two 75-48 police reports, one documenting petitioner's initial story about a shooting and a later report documenting that petitioner had made a false report to police, he did not arrest petitioner in connection with either report.

Detective Deayoung Park testified that petitioner was not placed under arrest until *after* Mr. Doan had identified him as one of the perpetrators (N.T. 10/9/08, 71). No evidence of record indicated that petitioner was handcuffed or otherwise restrained prior to his formal arrest. Thus, the record reflects that the reason petitioner's argument was rejected was not because trial counsel failed to advance it, but because the facts did not support that argument. Trial counsel cannot be held ineffective for failing to make an argument that counsel did in fact make, but

which was not supported by the facts.[2] Accordingly, petitioner's claim of trial counsel's ineffectiveness is meritless.

Petitioner's claim of appellate counsel's ineffectiveness is equally meritless. Because the facts did not support petitioner's argument, there was no reasonable basis for appellate counsel to make that claim, and petitioner could not have been prejudiced by appellate counsel's decision not to raise a baseless claim. Petitioner is, accordingly, not entitled to habeas relief on this claim.

4. Petitioner's Claim that the Preliminary Hearing Court Erred in Denying His Lineup Request Is Procedurally Defaulted and Noncognizable.

Petitioner's fourth claim is that the preliminary hearing court erred when it denied his request for a pretrial lineup. This claim is procedurally defaulted. Petitioner did not raise it in state court. Rather, he raised the distinct claim that trial counsel was ineffective for failing to object to the preliminary hearing court's denial of his lineup request.[3] "[M]ere similarity of claims is insufficient to exhaust." Duncan, 513 U.S. at 366. Moreover, pursuant to the PCRA's

---

[2] Additional facts adduced at trial also did not support petitioner's contention. For example, Detective Joseph Marano testified that petitioner's clothing was collected by hospital personnel, not police, presumably because he was initially believed to have been the victim in a shooting. A detective who was at the hospital for an unrelated matter collected that clothing (N.T. 9/19/08, 154). At the time that the clothing was collected at the hospital, Detective Marano testified, petitioner was not viewed as a suspect (Id., 166).

After Mr. Doan identified petitioner as one of the robbers, the clothing was placed into evidence. At that point, petitioner "was a suspect and he was arrested" (Id., 166-167). Thus, there was no dispute that petitioner's clothes were collected before the photo array was presented to Mr. Doan, but that was done by hospital personnel while petitioner was believed to be a victim rather than a suspect, and petitioner was not under arrest at that time. Even if this evidence had been adduced at the motions hearing, it would not have supported petitioner's claim.

In short, all the evidence of record establishes that petitioner was initially viewed as a shooting victim, and not a suspect, and was treated as such until Mr. Doan identified him as one of the robbers.

[3] To the extent that petitioner is pursuing his ineffectiveness claim here, this claim too is procedurally defaulted. The Superior Court ruled that this claim was waived due to petitioner's failure to comply with Pa.R.A.P. 2119. See Grant, 2019 WL 1988665 at *9. This was an independent and adequate state procedural ruling. See Bernard, 2016 WL 3268858 at *6 n.5.

time bar and waiver provisions, petitioner may no longer raise his claim of preliminary hearing court error in state court now.

Additionally, petitioner's claim is noncognizable because it is wholly undeveloped. It is the petitioner's burden to articulate his allegations in a straightforward manner and distinctly as violations of the federal constitution, both at the state level and in the federal forum. <u>Zettlemoyer v. Fulcomer</u>, 923 F.2d 284 (3d Cir. 1991), <u>cert</u>. <u>denied</u>, 502 U.S. 902 (1991) (bald assertions and conclusory allegations without specific facts supporting a claim of a constitutional violation do not provide sufficient grounds for habeas relief). <u>See</u> <u>also</u> <u>Mayberry v. Petsock</u>, 821 F.2d 179, 187 (3d Cir. 1987) (petitioner's vague and general allegations and supporting materials fail to make sufficient showing to justify relief), <u>cert</u>. <u>denied</u>, 484 U.S. 946 (1987). Petitioner had no federal constitutional right to a lineup, and he has not articulated any other violation of his rights.

Accordingly, petitioner is not entitled to habeas relief on this defaulted and noncognizable claim.

5.      Petitioner's Claim of Trial and/or Appellate Counsel's Ineffectiveness for Failing to Challenge the Admission of the 911 Tapes Is Procedurally Defaulted and Meritless.

In his fifth claim, petitioner asserts that "both trial and appellate counsel were ineffective in failing to challenge the introduction of the 911 tapes of the high speed chase" in which Officer Williams pursued the two men who had just robbed Manh Doan (Petition, 11). This claim is procedurally defaulted, as petitioner failed to present it in reviewable form to the state courts, and the Superior Court therefore found it waived due to petitioner's failure to comply with Pa.R.A.P. 2119 (Exhibit B, 21). This independent and adequate state procedural ruling renders the claim procedurally defaulted for purposes of federal habeas review.

It is also meritless. As petitioner acknowledges, "[b]oth trial counsel and appellate counsel did indeed challenge the admissibility of the 911 tapes at trial and on direct appeal, and

Petitioner was colloquyed [sic] at trial and agreed to stipulate to the 911 tape's authenticity" (Petition, 11). Given that trial counsel did, in fact, attempt to prevent the 911 tapes from being played for the jury, and appellate counsel litigated a claim that the admission of the tapes was unfairly prejudicial, petitioner can hardly complain that prior counsel was ineffective for failing to raise these arguments. That petitioner himself was colloquied on the matter, and agreed to stipulate to the tapes' authenticity, further cements the baselessness of his claim.

Petitioner does not explain what "incompetent" advice he believes trial counsel gave him on this issue. However, petitioner's agreement was hardly necessary, much less dispositive. Both trial and appellate counsel attempted to exclude the tapes, and both were unsuccessful. Petitioner cannot show that prior counsel was ineffective for taking the very action that he argues they should have taken, and he is not entitled to habeas relief on this defaulted and meritless claim.

6.    Petitioner's Claim that Appellate Counsel Was Ineffective for Failing to Allege Trial Counsel's Ineffectiveness Regarding the Ballistics Examiner Is Procedurally Defaulted and Meritless.

In his sixth claim, petitioner alleges that appellate counsel was ineffective for failing to raise a claim of trial counsel's ineffectiveness for failing to "object to the Commonwealth's failure to disclose the results of the ballistics examiner's examination" (Petition, 11-12), which petitioner appears to believe would have barred the admission of Sharee Bostic and Lawranda Casey's testimony concerning the straw purchases they made on petitioner's behalf.

This claim is procedurally defaulted, as petitioner failed to present it in reviewable form to the state courts. Due to petitioner's failure to comply with Pa.R.A.P. 2119, the Superior Court ruled that his claim was waived (Exhibit B, 21-22). This finding operates as an independent and adequate state court ruling, and results in the procedural default of petitioner's claim for purposes of federal habeas review.

Additionally, petitioner's claim is meritless. Pennsylvania law is clear that claims of trial counsel's ineffectiveness cannot ordinarily be raised on direct appeal and must instead be deferred to collateral review. See Commonwealth v. Grant, 813 A.2d 726, 738 (Pa. 2002) (a defendant generally cannot challenge trial counsel's effectiveness on direct appeal). For this reason, the Superior Court ruled that even if petitioner had not waived his claim, he would not be entitled to relief, as "appellate counsel could not be found ineffective for failing to challenge trial counsel's stewardship on direct appeal" (Exhibit B, 22).

Petitioner is not entitled to relief on his defaulted and meritless claim.

7.    Petitioner's Claim that Trial Counsel Was Ineffective for Failing to Request Jury Instructions Is Procedurally Defaulted and Meritless.

Petitioner's seventh claim, alleging that trial counsel was ineffective for failing to request various jury instructions relating to purported instances of police misconduct, was deemed waived on PCRA appeal owing to petitioner's failure, once again, to comply with Pa.R.A.P. 2119 (Exhibit B, 22). The Superior Court's ruling operates as an independent and adequate state law ruling, and results in petitioner's claim being procedurally defaulted on habeas review.

In addition to being defaulted, petitioner's claim is meritless. None of petitioner's allegations of police misconduct have any factual basis, and none of them could have supported a valid jury instruction. Officer Jaconi did not "destroy" usable fingerprints, and petitioner was not entitled to a jury instruction "that potentially exculpable [sic] evidence was destroyed" (Petition, 12). The fact that the clothes petitioner wore to the hospital were not tested for gunshot residue did not entitle him to an instruction on "negligence or bad faith by the Philadelphia police department" (Id., 13). Officer Roman testified that *Antwaun White*, not petitioner, was arrested at the scene of the crime, and petitioner was not entitled to any instruction concerning what he mischaracterizes as the officer's "false and highly prejudicial statement" (Id.). Even if there were

any factual basis whatsoever to petitioner's allegation – and there is none – these would be matters for counsel to argue in closing, not for a trial court to frame as an instruction of law.

Similarly, petitioner's complaints regarding the length of time that it took for Officer Zirilli to come forward as a witness, and the discrepancies between Manh Doan's initial description of his attacker and petitioner's actual physical characteristics, were matters of credibility that trial counsel could, and did, argue vigorously in closing (N.T. 9/23/08, 100, 107, 122-124). They were not, however, a valid basis for an instruction to the jury on the law.

Finally, although petitioner asserts in his supporting memorandum that the trial court gave an incorrect definition of reasonable doubt (an allegation that he did not present to the state courts at all, and did not include in his original habeas petition), the record reflects that the trial court gave the standard jury instruction on reasonable doubt:

> What is reasonable doubt? Although the Commonwealth has the burden of proving that the Defendant is guilty, this does not mean that the Commonwealth must prove its case beyond all reasonable doubt or to a mathematical certainty, nor must the Commonwealth demonstrate the complete impossible of innocence.
>
> A reasonable doubt is a doubt that would cause a reasonable, careful and sensible person to pause, hesitate, or refrain from acting upon a matter of highest importance in his or her own affairs or to his or her own interests. A reasonable doubt must be a real doubt. A reasonable doubt must fairly arise out of the evidence that was presented or out of the lack of evidence presented with respect to some element of each of the crimes charged. A reasonable doubt must be a real doubt. It may not be an imagined one nor may it be a doubt manufactured to avoid carrying out an unpleasant duty.

(N.T. 9/23/08, 157-158).

This instruction precisely followed Pa. SSJI (Criminal) §7.01 (Presumption of Innocence – Burden of Proof – Reasonable Doubt). The fact that the trial court misspoke, inadvertently saying "this does not mean that the Commonwealth must prove its case beyond all *reasonable* doubt" as opposed to the standard instruction's "beyond all doubt," does not give rise to a federal

constitutional violation. The error was followed by a clear and thorough definition of reasonable doubt, which again precisely followed the standard language, and was not repeated.

Because none of petitioner's allegations of police misconduct warranted a jury instruction, and the trial court's momentary lapse was nothing but a trivial slip of the tongue that was swiftly corrected, trial counsel cannot have been ineffective for failing to request those instructions, and petitioner cannot have been prejudiced by that omission. Petitioner's defaulted and meritless claim cannot entitle him to habeas relief.

> 8.    Petitioner's Claim that Trial Counsel Was Ineffective for Failing to Request a Mistrial Based on Alleged Prosecutorial Misconduct Is Procedurally Defaulted and Meritless.

Petitioner next alleges that trial counsel was ineffective for failing to request a mistrial based on alleged prosecutorial misconduct during closing arguments. Because petitioner failed to properly develop this claim in state court, the Superior Court ruled that it was waived due to petitioner's failure to comply with the requirements of Pa.R.A.P. 2119 (Exhibit B, 22-23). This ruling operates as an independent and adequate state law ruling, and results in petitioner's claim being procedurally defaulted on habeas review.

In addition to being defaulted, petitioner's claim is meritless. It is well established under Pennsylvania law that a prosecutor is afforded reasonable latitude in fairly presenting a case to the jury and may present his or her arguments "with logical force and vigor." Commonwealth v. Ogrod, 839 A.2d 294, 334 (Pa. 2003). A new trial is required only where the unavoidable effect of the misconduct "would be to prejudice the jury, forming in their minds fixed bias and hostility towards the defendant, so that they could not weigh the evidence and render a true verdict." Id. at 333-34. None of the complained-of remarks in this case even approached that standard. All of them were fair comment on the evidence, and did no more than ask the jury to draw certain inferences from that evidence. There was no basis for trial counsel to request a mistrial based on

the prosecutor's closing argument, and petitioner cannot have been prejudiced by that omission.

Petitioner is, therefore, not entitled to habeas relief on this defaulted and meritless claim.

>9.      Petitioner's Claim that Trial Counsel Was Ineffective for Failing to File a Post-Sentence Motion Challenging the Discretionary Aspects of Sentencing Is Procedurally Defaulted and Meritless.

Finally, petitioner asserts that trial counsel was ineffective for failing to file a post-sentence motion challenging the discretionary aspects of sentencing. This claim is procedurally defaulted. In state court, petitioner attempted to raise this claim for the first time in his Rule 1925(b) statement, which was clearly impermissible under Pennsylvania state law. See Pa.R.A.P. 302(a) (issues may not be raised for the first time on appeal). The Superior Court therefore ruled that it was waived (Exhibit B, 23). This independent and adequate state law ruling results in petitioner's claim being procedurally defaulted for purposes of habeas review.

Petitioner's claim is also meritless. The record reflects that the sentencing court was apprised of petitioner's high intelligence, job history, and "potential to turn himself around" (N.T. 11/25/08, 9-10). Trial counsel called friends, co-workers, and mentees who learned computer skills from petitioner to testify to his positive characteristics (Id., 10-18).

The record also reflects that the sentencing court ordered, and considered, a presentence investigation report and mental health evaluation; weighed petitioner's prior record score and offense gravity scores, after confirming them with counsel; and evaluated the public interest and society's need for safety as weighed against petitioner's rehabilitative prospects. The crimes in this case were serious: an armed carjacking, followed by a high-speed flight through a residential neighborhood in Philadelphia, and repeated shots fired at a police officer. Petitioner was convicted of four first-degree felonies, each of which carried a maximum sentence of 20 years and each of which could have been ordered to run consecutively to petitioner's other sentences.

Nevertheless, after providing a lengthy and detailed explanation for the sentence imposed and why that sentence was appropriate in light of petitioner's crimes and personal characteristics (N.T. 11/25/08, 43-50), the trial court ultimately imposed an aggregate sentence of 25 to 50 years' incarceration, followed by 15 years of probation. This sentence was carefully considered and was imposed after due consideration of all the statutory factors and petitioner's individual characteristics and circumstances. There is little reason to believe that it would have been changed if trial counsel had filed a post-sentence motion. Nor can petitioner show that he was prejudiced by that omission, particularly since no effort was made to challenge that sentence on appeal. Accordingly, petitioner is not entitled to relief on his defaulted and meritless claim.

### C.     A Certificate of Appealability Should Not Issue.

Petitioner has made no showing that a certificate of appealability may properly issue in this case. Pursuant to Local Appellate Rule 22.2 of the Rules of the United States Court of Appeals for the Third Circuit, at the time a final order denying a habeas petition is issued, the district judge is required to make a determination as to whether a certificate of appealability should issue. Under Section 2253(c)(2) of the federal habeas statute, a habeas court may not issue a certificate of appealability unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

When a federal court rejects a petitioner's constitutional claims on the merits, "the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). In other words, the petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Id. (internal quotation and citations omitted). See

also <u>Barefoot v. Estelle</u>, 463 U.S. 880, 892-93 (1983) ("It is generally agreed that "probable cause requires something more than the absence of frivolity, and that the standard is a higher one than the 'good faith' requirement of Sec. 1915."), <u>reh'g denied</u>, 464 U.S. 874 (1983). Here, petitioner offers no reason to conclude that reasonable jurists would debate his supposed entitlement to the writ on the basis of any of the claims asserted in his federal habeas petition.

## V.    CONCLUSION

For the foregoing reasons, respondents respectfully request that this Court deny the petition with prejudice and without issuing a certificate of appealability.

Respectfully submitted,

*/s/ Jennifer O. Andress*

JENNIFER O. ANDRESS
Assistant District Attorney

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL GRANT** | : | **CIVIL ACTION** |
| Petitioner, | | |
| **V.** | : | |
| **KEVIN KAUFFMAN et al.,** | : | **No. 19-6132** |
| Respondents. | | |

## CERTIFICATE REGARDING SERVICE

I, JENNIFER O. ANDRESS, counsel for appellants, hereby certify that on December 4, 2020, a copy of the foregoing response was filed on the ECF electronic filing system. Respondents did not serve the response on petitioner at this time. The Federal Litigation Unit of the Philadelphia District Attorney's Office is currently mostly working remotely due to the COVID-19 pandemic. Once the Federal Litigation Unit resumes working in the office on a more regular basis, respondents will serve petitioner via first-class mail at the following address:

> Smart Communications/PADOC
> Michael Grant/HV-2196
> SCI Huntingdon
> P.O. Box 33028
> St. Petersburg FL 33733

> */s/ Jennifer O. Andress*
> _____
> JENNIFER O. ANDRESS
> Assistant District Attorney