J. S20009/10

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| MICHAEL GRANT, | : | |
| | : | |
| Appellant | : | No. 114 EDA 2009 |

Appeal from the Judgment of Sentence entered November 25, 2008
In the Court of Common Pleas of Philadelphia County
Criminal at No(s): CP-51-CR-0003425-2007
CP-51-CR-0003426-2007

BEFORE: PANELLA, MUNDY, and FREEDBERG[*], JJ.

MEMORANDUM:                                   **FILED AUGUST 4, 2010**

Appellant, Michael Grant, appeals from the judgment of sentence
entered on November 25, 2008, by the Honorable Sandy L.V. Byrd, Court of
Common Pleas of Philadelphia County. After careful review, we affirm.

At approximately 6:45 p.m. on December 29, 2006, Grant and his co-
defendant, Antwuan White, approached Mahn Doan outside of 2800 Bittern
Place in Philadelphia. Grant and White, who were wearing ski masks and
dark coats, held Doan at gunpoint. They ordered Doan to hand over his
money and car keys. When Doan pretended to not understand English,
Grant removed his mask, grabbed Doan by the jacket, and repeated his
demand. In order to stall, Doan handed them the wrong set of keys. When

_____

[*] Retired Senior Judge assigned to Superior Court.

J. S20009/10

Grant and White discovered that the keys did not fit the car door, Grant threatened to shoot Doan if he did not relinquish the correct key. Doan complied, and Grant and White drove away with the car, Doan's cell phones, and his four dollars.

Doan then went across the street to the home of a police officer, who called 911 for Doan. Coincidentally, another off-duty police officer witnessed the incident from his car and pursued Grant and White. The pursuit turned into a high-speed car chase. At the intersection of 65th Street and Eastwick Street, Grant exited the stolen vehicle to fire several gunshots at the off-duty officer pursuing them. Grant then returned to the car, and the chase resumed. As they crossed the Passyunk Bridge, Grant again fired his weapon at the officer, who returned fire. When Grant and White reached the corner of Sixth and Ritner Streets, they stopped the vehicle and attempted to escape on foot. The officer chased and arrested White. Doan was brought to the scene and identified White as one of his assailants.

Grant was arrested later at the University of Pennsylvania Hospital when he sought treatment for a gunshot wound to the arm. Although Grant's physical characteristics did not match the first description given by Doan, the police had reason to believe that Grant was the second perpetrator. The police constructed a photographic array around Grant's actual physical characteristics and presented the array to Doan for identification. The presenting officer informed Doan that the police had a

J. S20009/10

suspect, but the officer did not suggest which one of the eight persons in the array was the suspect. Doan positively identified Grant from the array.

Prior to his trial, Grant moved to suppress all identifications and the testimonies of Sharee Bostic and Lawandra Casey. Both Bostic and Casey were prepared to testify that they had straw purchased nine millimeter (9mm) handguns for Grant—the same caliber of weapons as the shell casings recovered from the scene. The trial court denied Grant's motions to suppress. The court also granted, over Grant's objection, the Commonwealth's motion *in limine* to introduce the 911 recordings that captured some of the incident in live action. All of the foregoing evidence was admitted at trial.

A jury convicted Grant of one count of robbery by threat of serious bodily injury,[1] one count of criminal conspiracy,[2] one count of robbery of a motor vehicle,[3] one count of carrying a firearm without a license,[4] one count of carrying a firearm in public in Philadelphia without a license,[5] and one count of possessing an instrument of crime.[6] On November 25, 2008, the trial court sentenced Grant to an aggregate term of twenty-five to fifty years

---

[1] 18 PA. CONS. STAT. ANN. § 3701(a)(1)(ii).
[2] 18 PA. CONS. STAT. ANN. § 903(a)(1).
[3] 18 PA. CONS. STAT. ANN. § 3702(a).
[4] 18 PA. CONS. STAT. ANN. § 6106(a)(1).
[5] 18 PA. CONS. STAT. ANN. § 6108.
[6] 18 PA. CONS. STAT. ANN. § 907(a).

J. S20009/10

of imprisonment, followed by fifteen years of probation.   This timely appeal

followed.

On appeal, Grant raises the following issues for review:

1.    Did not the lower court err by denying appellant's motion to suppress identification evidence as appellant was subject to such an unduly suggestive photographic identification procedure that the out-of-court identification was so unreliable as to require suppression while so tainting the in-court identification as to also require suppression?
2.    Did not the lower court err by permitting the Commonwealth to play the 911 calls of the high speed chase and shooting at issue in this case, where the 911 calls were highly prejudicial and admitted only to appeal to the passions of the jurors by providing an overly emotional rendering of the events?
3.    Did not the lower court err by permitting the testimony of two women who straw purchased guns for appellant when such testimony was not only irrelevant, but inadmissible evidence of other crimes committed by appellant, unnecessarily cumulative and introduced by the Commonwealth only to show appellant's propensity for criminal activity?

Appellant's Brief, at 3.

Before we can consider the merits of any questions that Grant has

presented, we must first address whether Grant has waived his right to

appeal issues one and three, as the Commonwealth claims.   The

Commonwealth contends that Grant's first claim, regarding the suppression

of the identifications, is waived because Grant did not raise the matter in a

written and timely pre-trial motion.   **See** Pa.R.Crim.P. 581(b) (requiring a

motion to suppress evidence to be made in a timely omnibus pretrial

motion); **see also Commonwealth v. Rosario**, 648 A.2d 1172, 1173 (Pa.

2008) (stating "the general rule is that all motions to suppress must be in

J. S20009/10

writing and filed with the court of record"). Rule 581(b), however, also provides an exception for when "the interests of justice otherwise require" the trial court to hear the motion. This exception gives the trial court discretion to entertain a motion to suppress, even if the motion is untimely or not filed in writing before trial. ***Commonwealth v. Micklos***, 672 A.2d 796, 802-803 (Pa. Super. 1996); ***Commonwealth v. Kuhn***, 475 A.2d 103, 105 (Pa. Super. 1984). If the trial court exercised its discretion and entertained the motion, "it no longer makes any sense to consider waiver" on appeal. ***Kuhn***, 475 A.2d at 105 (citation omitted).

Grant orally moved to suppress the identifications at a hearing on October 9, 2007. The trial court, before ruling on the motion, heard argument from both sides and received testimony over two days. When the trial judge then ruled on the merits of the suppression claim, she exercised her discretionary power under Rule 581(b) to excuse noncompliance with the formal mandates of the rule. ***Id***. (citing ***Commonwealth v. Pinno***, 248 A.2d 26, 29 (Pa. 1968)). Therefore, the suppression claim that Grant has on appeal has not been waived.

The Commonwealth also asserts that Grant's third claim, regarding the admission of Bostic and Casey's testimony, has been waived. Prior to trial, the Commonwealth made a motion *in limine* to admit the testimonies to prove Grant's access to 9mm firearms. Grant contested the motion, claiming the testimony was irrelevant, unduly prejudicial, and cumulative.

J. S20009/10

The trial judge granted the Commonwealth's motion in part and denied it in part, limiting the testimony to prevent evidence that Grant faced other criminal liability from being admitted at trial.

The Commonwealth argues that because Grant did not object to the court's ultimate ruling on the motion, in addition to the motion itself, Grant waived his right to challenge the ruling on appeal.  Appellee's Brief, at 19-20 (citing **Commonwealth v. Colon**, 846 A.2d 747, 752 (Pa. Super. 2004)). The Pennsylvania Rules of Procedure did not require Grant to take such action, however.  The Commonwealth moved to admit testimonial evidence, which the trial court partially admitted and partially excluded.  Rule 103(a) of the Pennsylvania Rules of Evidence states that "[o]nce the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal."  Once Grant made a timely objection to the Commonwealth's evidence, an objection which does appear in the record, he satisfied the mandates of Pa.R.E. 103.  A second objection to the ruling itself was not required.  Therefore, the issue was properly raised in the lower court and is reviewable on appeal.  Pa.R.A.P. 302(a).

Having concluded that the Commonwealth's waiver claims are meritless, we now address each of Grant's presented issues in turn.  Grant's first claim on appeal challenges the trial court's refusal to suppress the

J. S20009/10

identification evidence, which Grant insists was procured from an unduly suggestive procedure.

The standard of review in addressing a challenge to the trial court's denial of a suppression motion is well settled. This Court may determine only whether the trial court's factual findings are supported by the record and whether the legal conclusions drawn therefrom are correct. *Commonwealth v. Atkinson*, 987 A.2d 743, 752 (Pa. Super. 2009) (citations omitted). The question before this Court, therefore, is whether the facts found by the court below were supported by the record and, if so, whether the lower court erred by concluding upon these facts that the photographic identification procedure was not unduly suggestive. *Commonwealth v. Perry*, 982 A.2d 1009, 1012 (Pa. Super. 2009). In answering this question, we may consider "only the evidence of the prosecution and so much of the evidence for the defense which remains uncontradicted when fairly read in the context of the whole record." *Commonwealth v. Crork*, 966 A.2d 585, 586-87 (Pa. Super. 2009) (citation omitted).

Grant asserts that the photographic array presented to Doan, and from which Doan identified Grant as his assailant, was unduly suggestive and therefore unreliable. This Court will suppress an identification only if the accompanying procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

J. S20009/10

*Commonwealth v. Burton*, 770 A.2d 771, 782 (Pa. Super. 2001) (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)).  In other words, the identification procedures must have been so unreliable, due to its suggestiveness, that a mistaken identification was the necessary result. *Commonwealth v. Kyle*, 533 A.2d 120, 131 (Pa. Super. 1987).  This standard applies equally to identifications made from photographic lineups. *Commonwealth v. Hughes*, 555 A.2d 1264, 1272 (Pa. 1989).

Grant bases his claim of undue suggestiveness on two theories.  He first argues that the photographic array was unduly suggestive because no one pictured in the array matched the victim's original description.  Yet, regardless of the disparity between the initial description and the ultimate identification, Grant's argument is meritless.  An identification procedure is not unduly suggestive because the photographs in the array did not match the victim's description of the assailant.  *In re Love*, 646 A.2d 1233, 1237 (Pa. Super. 1994).  Grant's argument confuses the issue of undue suggestiveness with questions of credibility.  *Commonwealth v. Kyle*, 533 A.2d 120, 131 (Pa. Super. 1987).  The trial court, in ruling on the suppression motion, had the duty of assessing any contradictions between the victim's descriptions and the identification.  *Id*.  Because it was within the province of the trial court to weigh the credibility of the identification, the disparity does not provide a basis for overturning the trial court's suppression ruling on appeal.  *See Commonwealth v. Swinson*, 626 A.2d

J. S20009/10

627, 631 (Pa. Super. 1993) (ruling that credibility issues in the identification procedure do not provide a basis for suppression on appeal).

Grant further challenges the identification as unduly suggestive because a police officer indicated to the witness that a suspect was pictured in the photographic array. Providing such information to the witness before he views the lineup does not render the identification procedure unduly suggestive. *Commonwealth v. Kubis*, 978 A.2d 391, 397 (Pa. Super. 2009) (upholding an identification where "[the detective] told [the victim] that the police had a suspect in mind before [the victim] chose Appellant from the lineup"); *Love*, 646 A.2d at 1236 (upholding an identification where "the detective told the victim there was a suspect in custody" during the identification procedure). These statements do not create a substantial likelihood of misidentification. *Kubis*, 978 A.2d at 397. Because misidentification was not the likely result, let alone the "necessary result," the identification procedure was not unduly suggestive, and Grant's first claim on appeal is denied.[7]

The second issue that Grant raises on appeal is whether the trial court erred by admitting the 911 phone calls, which Grant believes were unfairly prejudicial, into evidence. Decisions to admit evidence lie within the

---

[7] Since the out-of-court photographic identification procedure was not unduly suggestive, the in-court identification was not tainted by the photographic array. *Swinson*, 626 A.2d at 631. Consequently, there is no merit to Grant's subsidiary claim that the in-court identification should have been suppressed. *Love*, 646 A.2d at 1237.

J. S20009/10

discretion of the trial court, and such decisions will not be reversed unless they amount to an abuse of discretion. ***Commonwealth v. Reed***, 990 A.2d 1158, 1167 (Pa. Super. 2010). An abuse of discretion occurs where the trial court misapplied the law, exercised its judgment in a manifestly unreasonable manner, or allowed its actions to be motivated by prejudice, bias, or ill will. ***Commonwealth v. Trippett***, 932 A.2d 188, 199 (Pa. Super. 2007). A mere error in judgment does constitute an abuse of discretion. ***Commonwealth v. Bishop***, 936 A.2d 1136, 1143 (Pa. Super. 2007).

Under Pa.R.E. 403, otherwise relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice. All relevant evidence is inherently prejudicial, however, and evidence should not be excluded simply because it is detrimental to the defendant's case. ***Commonwealth v. Page***, 965 A.2d 1212, 1220 (Pa. Super. 2009) (citation omitted). Rule 403 permits exclusion only when the prejudice is unfair. Unfair prejudice exists when the evidence provokes the factfinder into reaching its verdict on an improper basis. ***Id***.

The 911 calls admitted by the trial court below captured the sounds of the high-speed car chase between the co-defendants and police officers. Grant argues that the sounds of gunshots and screeching tires "played like an action movie for the jury," creating an overly-dramatic environment where the jurors were distracted from impartially applying the law.

J. S20009/10

Appellant's Brief, at 28. We disagree with Grant's assertion and find that the trial judge did not abuse her discretion by admitting the tapes.

The 911 recording, which depicts the crime as it occurs, was extremely probative of how the incident transpired *Commonwealth v. Wright*, 961 A.2d 119, 151 (Pa. 2008). Playing the 911 call allowed the jury to better appreciate how the events unfolded and the nature of the robbery. The recording also allowed the jury to corroborate the charges that the assailant, who the jury concluded was Grant, had unlawfully possessed firearms. The 911 calls did not divert the jury's attention away from its duties. Rather, the recordings "focused the jury on the moments [during] the crime and assisted [the jury] in assembling all of the evidence presented." *Id*. The trial court was not required to sanitize the trial by excluding evidence that develops the history of the criminal events. *Commonwealth v. Wharton*, 607 A.2d 710, 720 (Pa. 1992).

Grant makes an additional claim for excluding the 911 calls under Rule 403: that the recording was a needless presentation of cumulative evidence. Essentially, Grant argues that Rule 403, under its cumulative evidence clause, "bar[s]" the admission of a recording when a witness thoroughly testifies to its contents at trial. Appellant's Brief, at 29. Contrary to Grant's blanket assertion, cumulative evidence is not automatically barred from trial. Rule 403 subjects cumulative evidence to a balancing test: it may be

J. S20009/10

excluded only if considerations of needless presentation outweigh the probative value of the evidence.

Recordings are not automatically prohibited by Rule 403 because their contents were also brought out through direct testimony. ***Commonwealth v. Ferri***, 599 A.2d 208, 214 (Pa. Super. 1991). As discussed above, the tapes strengthened the jury's understanding of the events and verified a key element of some of the charges—possession of a firearm. The trial court's determination that the recordings were not cumulative, or not so cumulative to warrant suppression, will not be disturbed absent an abuse of discretion. ***Id***.; ***see also Commonwealth v. Robinson***, 864 A.2d 460, 504 (Pa. 2004) (upholding the trial court's decision to admit 911 telephone calls despite the fact that they were somewhat cumulative). Accordingly, we find that the trial judge did not abuse her discretion by admitting the 911 recordings. Grant's second claim on appeal is denied.

Grant's third and final claim challenges the admission of testimony from two women, Bostic and Casey, who straw purchased 9mm firearms for him. Grant alleges three sources of error: first, that the testimony was irrelevant; second, that the testimony was inadmissible other-crimes evidence used to show his criminal propensity; and third, that the testimony was needlessly cumulative. As before, the trial court's decision to admit the testimony will not be disturbed absent an abuse of discretion. ***Reed***, 990 A.2d at 1167.

- 12 -

J. S20009/10

Pursuant to Pa.R.E. 401, evidence is relevant if it makes the existence of any material fact more or less probable than it otherwise would be. Generally, a weapon is not relevant to the case at bar, and should not be admitted into evidence, unless it can be specifically linked to the crime charged. ***Commonwealth v. Robinson***, 721 A.2d 344, 351 (Pa. 1998). Nevertheless, an exception to the general rule provides that weapons evidence may be admitted to prove that the accused possessed a weapon suitable for committing the crime. ***Id***. When the particular weapon used during the commission of the crime cannot be specifically identified, evidence that the defendant possessed a weapon of the same type tends to prove that he owned or had access to the instrument of the crime. ***Commonwealth v. Broaster***, 863 A.2d 588, 592 (Pa. Super. 2004) (citing ***Commonwealth v. Williams***, 640 A.2d 1251, 1260 (Pa. 1994)); ***Commonwealth v. Akers***, 572 A.2d 746, 754 (Pa. Super. 1990) (citing ***Commonwealth v. Yount***, 314 A.2d 242, 249 (Pa. 1974)). Thus, evidence that the defendant possessed a weapon that could have been used to commit the crime is relevant. ***Akers***, 572 A.2d at 754.

The testimonies of Bostic and Casey revealed that Grant, prior to the instant robbery and unlawful gun possession, illegally straw purchased firearms on several occasions. This testimony tended to prove that Grant had access to a variety of firearms, including several 9mm handguns. Although investigators could not identify the specific weapon used during the

J. S20009/10

robbery and the car chase, they were able to identify the weapon's caliber: nine millimeter. Grant's access to this type of weapon was relevant to prove that he had the instrument of the crime in his possession. The testimony was relevant and admissible under Rule 401.

Grant next contends that the testimony, which reveals that he participated in illegal straw purchases, should have been barred under Pa.R.E. 404(b) as evidence of prior bad acts. Rule 404(b) provides multiple avenues for excluding other-act evidence, depending upon the circumstances for which a party seeks to admit the evidence. When evidence of other crimes, wrongs, or acts offered to prove that the defendant acted in conformity with a character trait on a particular occasion, the other-act evidence is strictly inadmissible under Rule 404(b)(1). Conversely, Rule 404(b)(3) governs if the other-act evidence was offered for some other purpose, and the trial judge must determine whether the probative value of the other-act evidence outweighs its potential for prejudice.

Grant's theory under Rule 404(b)(1), that the testimony should have been barred because it brought his character into question, is unpersuasive. Rule 404(b)(1) is not a catch-all prohibition against all character evidence. Indeed, Pa.R.E. 404(b)(2) explicitly recognizes that other-act evidence is admissible for purposes other than proving conformity with character. Moreover, the list of exceptions found in Rule 404(b)(2) is not exhaustive,

J. S20009/10

despite Grant's contention to the contrary. ***Commonwealth v. Dillon***, 925 A.2d 131, 137 (Pa. 2007) (citing Pa.R.E. 404(b) cmt.). Other-act evidence does not need to fit squarely and soundly within one of the enumerated exceptions in order to be admissible. So long as the evidence is legitimately offered for some reason other than showing propensity, Rule 404(b)(1) does not bar its admission. The testimonies of Bostic and Casey established that Grant had access to 9mm handguns, which was important at trial for proving identity and opportunity. Because the Commonwealth presented the testimony to prove something other than Grant's criminal propensities, Rule 404(b)(1) does not apply.

Grant's alternative argument, that the other-act evidence should have been excluded under Rule 404(b)(3), is also meritless. Pa.R.E. 404(b)(3) requires the trial court, in criminal cases, to admit other-act evidence "only upon a showing that the probative value of the evidence outweighs its potential for prejudice." The trial court, in ruling upon admissibility, should balance the potential prejudice against the Commonwealth's need for the evidence. ***Commonwealth v. Cascardo***, 981 A.2d 245, 251 (Pa. Super. 2009). The availability of certain precautions—for example, cautionary and limiting instructions—may reduce the potential prejudicial impact of the other-act evidence. ***Id***.

The trial court carefully considered the probative value of the testimony and its potential prejudicial impact. Bostic testified that she and

J. S20009/10

Grant purchased a firearm together. Grant provided the funds for the purchase, while Bostic pretended to be the true buyer, registering the gun in her name. After the transaction was completed, Grant retained possession of the firearm despite not having a license to carry or possess it. Similarly, Casey testified that Grant drove her to the gun store, where she purchased and registered a handgun in her name. Grant witnessed Casey store the handgun under her couch. He returned the next day, retrieved the gun, and never returned it to her.

The trial court concluded, and we agree, that this testimony was extremely important to the Commonwealth's case. Not only did the testimony establish that Grant had access to 9mm pistols, the same type used during the robbery, the evidence also showed that Grant possessed a firearm without a license—an element of two crimes for which he was convicted. Moreover, the trial court placed certain restrictions on how the testimony could be presented. The Commonwealth was prohibited from revealing that Grant was arrested, charged, or otherwise culpable for any crime committed with respect to the straw purchases. The Commonwealth also could not inflame the testimony by discussing the types of weapons involved, unless the weapon was of the same type used during the robbery. The testimony was strictly limited to a narrow discussion of the straw purchases, which were relevant to and probative for the Commonwealth's

J. S20009/10

case.  We find that the trial court did not abuse its discretion by admitting the testimony under Rule 404(b)(3).

As his final challenge to Bostic and Casey's testimony, Grant claims that their testimony was a needless presentation of cumulative evidence under Pa.R.E. 403.  Although both witnesses provided testimony to the same end—that Grant had access to 9mm handguns—the evidence was not so cumulative to require exclusion.  Actually, the Commonwealth's theory that Grant had general access to these particular weapons was strengthened by introducing both pieces of testimony.  The testimony of one witness would merely prove that Grant had access to a single, particular 9mm firearm.  However, testimony from multiple witnesses recounting multiple straw purchases showed that Grant had access to multiple 9mm handguns.  Because the firearm used during the robbery could not be positively identified, demonstrating that Grant had general access to similar weapons became more important.  Considering also the limited potential prejudice of the restricted testimony, as discussed above, such probative evidence was properly admitted under Rule 403.

Judgment of sentence affirmed.  Jurisdiction relinquished.

J. S20009/10

Judgment Entered.

Prothonotary

Date:_____