## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL GRANT,** | : | **CIVIL ACTION** |
| *Petitioner*, | : | |
| | : | |
| **v.** | : | |
| | : | |
| **KEVIN KAUFFMAN, et al.,** | : | **NO.  19-cv-6132** |
| *Respondents*. | : | |

## MEMORANDUM

**KENNEY, J.**                                                                 **October 6, 2022**

### I.      INTRODUCTION

Michael Grant petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Grant alleges multiple instances of ineffective assistance of both trial and appellate counsel, that the State violated his constitutional *Brady* rights, and that his request for a lineup should have been granted. The Honorable Magistrate Judge David R. Strawbridge recommends that the Court deny the petition. Ultimately, the Court adopts Judge Strawbridge's reasoned Report and Recommendation. The Court also denies a certificate of appealability.

### II.      BACKGROUND

The key factual and procedural background of this case is outlined in the Report and Recommendation in detail and is reiterated here. ECF No. 30. On December 29, 2006, around 6:45pm, Grant and his co-defendant, Antwuan White, approached Mahn Doan in Phildelphia. Grant and White wore ski masks and dark coats. They held Doan at gunpoint and ordered him to give over his money and car keys. Doan pretended not to understand English, and Grant removed his mask, grabbed Doan by the jacket, and again demanded his money and keys. In an effort to evade Grant and White, Doan handed them the wrong set of keys. When the co-defendants

1

realized the keys did not fit in the car door, Grant threatened to shoot Doan if he did not hand

over the car keys. Fearing for his life, Doan gave Grant and White the car keys and the two drove

away in the car, also taking Doan's cell phones and four dollars.

After Grant and White fled, Doan ran across the street to the home of Officer Zirilli, who

called 911. Officer Zirilli would later identify Grant in a post-incident lineup and in the

courtroom during trial. ECF No. 30 at 15. Another off-duty police officer, Officer Michael

Williams, witnessed the incident from his car and pursued Grant and White. Grant eventually

exited the stolen vehicle and fired several gunshots at Officers Williams. Grant then returned to

the car and the chase continued. At another point, Grant again fired gunshots at Officer Williams,

who returned fire. Grant and White then stopped the vehicle and attempted to escape by foot.

Officer Williams was able to apprehend White but Grant escaped. Doan was brought to the scene

and identified White as one of his attackers. Officer Williams provided a description of the other

perpetrator that was consistent with Grant's characteristics. ECF No. 30 at 16.

On the morning of December 30, 2006, Grant, suffering from a gunshot wound, admitted

himself to the University of Pennsylvania Hospital. Doan gave an initial description of his

second attacker that was not an exact match to Grant's physical characteristics. However, the

police suspected Grant for a variety of reasons, including Doan's positive identification of Grant

in a photo array, and that Grant provided authorities with a false account of the events that

caused his gunshot wound for which he sought treatment mere hours after the incident. On

March 20, 2007, the court held a preliminary hearing. On July 27, 2007, Grant was released on

nominal bail to house arrest with electronic monitor. Grant's bail was later revoked when it was

revealed that he had previously asked Ms. Lawandra Casey and Ms. Sharee Bostic to purchase

firearms on his behalf.

Prior to trial, Grant's counsel moved to suppress all identifications and the testimony of both Ms. Casey and Ms. Bostic. Those witnesses were prepared to testify that they had straw purchased nine millimeter (9mm) handguns for Grant—the same caliber of weapons as the shell casings recovered from the scene. Ms. Bostic would testify that Grant gave her money to purchase a .9 mm handgun, registered herself as the owner and gave it to Grant. ECF No. 30 at 16. Ms. Casey would testify that she purchased a .9mm handgun for herself at Grant's insistence, which Grant then stole and never returned. *Id.* Ms. Bostic would also testify that Grant told her he had been shot in the arm by police. The trial court denied Grant's motion to suppress and granted the Commonwealth's motion *in limine* to introduce the 911 recordings from the incident. All of that evidence was admitted at trial. *See Commonwealth v. Grant*, 2019 WL 1988665, at *1 (Pa. Super. Ct. May 6, 2019); ECF No. 30 at 2-3.

After trial by jury in September 2008, Grant was convicted by jury of attempted murder, aggravated assault, robbery, criminal conspiracy, and related firearm offenses in the Philadelphia Court of Common Pleas. *Id.* Grant received an aggregate sentence of 25 to 50 years of imprisonment, followed by 15 years of probation. *Id.*

Grant filed a notice of appeal with the Pennsylvania Superior Court, arguing that the lower court erred in admitting Mr. Doan's identification based on an "unduly suggestive" photo array, erred in allowing the "highly prejudicial" 911 calls to play, and erred in permitting two women to testify that they had bought guns for Grant. *See Commonwealth v. Grant*, No. 114 EDA 2009, slip. op. at 4 (Pa. Super. Aug. 4, 2010) ("*Grant I*"). On August 4, 2010, Grant's judgment was affirmed and he was later denied allowance of appeal. *See Commonwealth v. Grant*, 19 A.3d 1050 (Pa. 2011). On November 30, 2011, Grant filed a petition and subsequently various amendments and supplements for review pursuant to the Pennsylvania Post Conviction

Relief Act ("PCRA"), where he raised ten grounds for relief. ECF No. 30 at 4-5. The PCRA court dismissed the petition, finding that Grant's claims were either without merit or waived due to procedural defects in his appeal. *Id*. The Pennsylvania Supreme Court denied allowance of appeal on October 16, 2019. *See Commonwealth v. Grant*, 218 A.3d 852 (Pa. 2019).

On December 26, 2019, Grant filed a *pro se* Petition for Writ of Habeas Corpus. ECF No. 1. Grant subsequently filed two amendments to his petition, a Memorandum of Law in support of his petition, and a reply brief. ECF Nos. 5, 7, 19, 20. On December 5, 2020, Respondents filed their opposition to Grant's petition. ECF No. 16. Grant's petition requested relief on the following grounds: (1) *Brady* violation for failing to disclose complainant's criminal record or ineffective counsel for failing to investigate complainant's criminal record; (2) ineffective counsel for not raising issues of police negligence and/or misconduct; (3) ineffective counsel regarding suppression of in-court and out-of-court identification of Petitioner; (4) lower court erred in not granting a lineup upon request; (5) ineffective counsel in its challenge to the 911 call as evidence; (6) ineffective counsel relating to the results of the ballistic experts examination and the testimony of straw purchasers; (7) ineffective counsel for failing to request adequate jury instructions; (8) ineffective counsel for failing to object or request a mistrial; and (9) ineffective counsel for failing to file post-sentence motions challenging the length of sentence. ECF No. 1. Magistrate Judge David R. Strawbridge issued a Report and Recommendation. ECF No. 30. In the Report and Recommendation, Judge Strawbridge found that all of Grant's claims were either without merit or procedurally defaulted. *Id*. Judge Strawbridge recommended denial of the petition and denial of the certificate of appealability.

Grant timely objects to Magistrate Judge David R. Strawbridge's Report and Recommendation. ECF No. 32. The Court makes a *de novo* determination of the portions of the

4

Report and Recommendation to which the objection is made. *Equal Emp't Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017) (citing 28 U.S.C. § 636(b)(1)).

## III.    STANDARD OF REVIEW

The federal courts' power to grant habeas relief is limited. A court cannot grant habeas relief unless the state court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). To prevail under the "contrary to" clause, a petitioner must show that the state court applied a rule differently from the governing law set forth by the United States Supreme Court or decided a case differently than the United States Supreme Court on a set of materially indistinguishable facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). To prevail under the "unreasonable determination" clause, a petitioner must show that the state court correctly identified a governing legal principle but unreasonably applied it to the facts of a particular case. *Id.* This is a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citations omitted).

Additionally, a federal court cannot grant a petition for a writ of habeas corpus unless the petitioner has exhausted the remedies available in state court. *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997) (citing 28 U.S.C. § 2254(b)(1)(A)). To exhaust their remedies, a petitioner must have fairly presented the same claim to the state court and pursued that claim through one complete round of the state's established appellate review process. *See Bronshtein v. Horn*, 404 F.3d 700, 725 (3d Cir. 2005) (citation omitted). If a petitioner failed to exhaust their

state remedies and would now be procedurally barred from presenting their claims in state court, those claims are procedurally defaulted for purposes of federal habeas relief. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). A petitioner may overcome procedural default by demonstrating either (1) good cause for the default and actual prejudice as a result of the violation of federal law or (2) failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. The Supreme Court has recognized a narrow exception for petitioners who cannot satisfy the requirements of exhaustion. In *Martinez*, the Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 566 U.S. 1, 9 (2012). To excuse a default under *Martinez*, the court must determine whether PCRA counsel was ineffective under the standards of *Strickland* v. *Washington*, 466 U.S. 668 (1984), and determine that the underlying claim of ineffectiveness of trial counsel is "substantial" under the standard for granting a certificate of appealability. *Martinez*, 566 U.S. at 14 (citing *Miller-El v. Cockerell*, 537 U.S. 322 (2003)). However, the court may forego the *Martinez* analysis if the underlying claim has no merit. *See* 28 U.S.C. § 2254(b)(2) (writ may be denied "notwithstanding the failure of the applicant to exhaust" state court remedies); *see also Real v. Shannon*, 600 F.3d 302, 309 (3d Cir. 2010) (counsel not ineffective for failing to raise a meritless argument); *Parrish v. Fulcomer*, 150 F.3d 326, 328-29 (3d Cir. 1998) (same).

For habeas petitions that claim ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner must show that counsel's representation "fell below an objective standard of reasonableness" and that there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. at 686, 694. Courts "evaluate the conduct from counsel's perspective at

the time," rather than with the benefit of hindsight, and "apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (citations omitted). A petitioner must show counsel's errors were so serious as to deprive the petitioner of a fair trial. *Id.*

## IV.    DISCUSSION

Grant makes numerous objections, including the following, to the Report and Recommendation: that he meets the second and third prongs of the test for a *Brady* violation, that his arrest was unlawful because it was effectuated prior to issuance of an arrest warrant, that his counsel was ineffective in many phases of trial and appeal (including in regards to the photo array lineup by police, fingerprint evidence from the stolen vehicle, gunshot residue testing, Officer Roman's trial testimony, and Officer Zirilli's trial testimony), that Judge Strawbridge failed to take into account details that contradicted certain evidence and testimony, that Judge Strawbridge's conclusion that the trial court's clear and thorough explanation of reasonable doubt corrected its one-word language error is wrong, that Judge Strawbridge's conclusion that the alleged 29 instances of prosecutorial misconduct did not infect the trial with unfairness was incorrect, that the upward departure from the guidelines in sentencing did not properly consider mitigating factors, and that Judge Strawbridge did not evaluate his cumulative error claims.[1] *See* ECF No. 32. The Court conducts *de novo* review portions of the Report and Recommendation to which Grant objects.

---

[1] Since the Court finds no merit to any of Grant's claims, we need not specifically discuss cumulative error. Even if the Court evaluated cumulative error, the few, immaterial instances of misstatements or "misconduct" at trial would certainly not rise to the level of cumulative error as explained below.

Ultimately, the Court adopts the Report and Recommendation in its entirety and dismisses the Petition and the Objections.

## A. *Brady* Violation Claim

In his habeas petition, Grant alleges that the Commonwealth violated *Brady v. Maryland*, primarily by withholding or failing to provide information regarding the complainant's criminal record, most notably his conviction for *crimen falsi*. ECF No. 1 at 7; 373 U.S. 83 (1963). Grant argues that prior fraud and related convictions could have been used to impeach the complainant and question his credibility. *Id*. Judge Strawbridge agreed with the state court and determined that the complainant's credibility was not material to the outcome of the trial because there was overwhelming evidence of guilt. ECF No. 30 at 15-17. Judge Strawbridge further determined that the complainant was thoroughly cross-examined by Grant's counsel on any inconsistencies in his testimony and later Grant's counsel addressed the complainant's credibility in closing arguments. *Id*. at 17.  In his Objections, Grant repeats his arguments in substantially the same manner as in his Petition.

The Court finds that Grant's *Brady* violation claim is meritless. All three prongs of the *Brady* test must be satisfied to establish a constitutional violation.[2] The second prong is that evidence must have been suppressed by the State, either willfully or inadvertently. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). The third prong is that omission of this evidence was prejudicial to the accused at trial. *Id*. As to the second prong, Grant alleges that the Commonwealth constructively possessed the information as criminal records are within control of the government and available on public judicial dockets and the FBI criminal background

---

[2] The Court agrees that the evidence of prior criminal record of the complainant is favorable to Grant and, therefore, satisfies the first prong of the test.

database. ECF No. 7 at 11. However, this is not how the Court determines whether the Commonwealth was in possession of evidence prior to or at trial. Grant has made no showing that the Commonwealth was aware of these records and purposely or inadvertently withheld them from him. The state court claimed that the complainant had numerous aliases, which made his convictions undiscoverable by the Commonwealth. ECF No. 7 at 15. The Court is similarly positioned to Judge Strawbridge in its reluctance to examine the Superior Court's decision for reasonableness based on the information available at this time. ECF No. 30 at 19. Even if Grant showed that this evidence could have been possessed by the Commonwealth, that is insufficient to find a *Brady* violation because Grant's petition fails to satisfy the third prong. Accordingly, a determination of the second prong is not necessary to find that the factual findings are reasonably based in the record and that Grant's *Brady* claim is without merit.

As to the third prong, Grant asserts that the jury relied heavily on the complainant's testimony, despite its inconsistencies, and that it was material to the conviction. However, the Superior Court reviewed these arguments and found Grant's *Brady* claim was meritless and did not prove that it would have a reasonable probability of impacting the outcome of the trial or made it unfair based on this omission. Here in the Third Circuit, the Court looks at "the totality of the evidence presented in the state-court proceeding" pursuant to § 2254(d)(2). *Eley v. Erickson*, 712 F.3d 837, 846, n.11 (3d Cir. 2013) (internal citations omitted). A factual determination is "unreasonable" under § 2254(d)(2) "only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record." *Breighner v. Chesney*, 301 F. Supp. 2d 354, 368–69 (M.D. Pa. 2004), *aff'd*, 156 F. App'x 539 (3d Cir. 2005). To warrant relief, "the petitioner must show (1) that an unreasonable determination of a factual issue was made and (2) that the state court decision was based on this improper finding." *Id*.

In addition to the complainant's testimony identifying Grant as the perpetrator of the crime, Officer Zirilli and Officer Williams were also witnesses to the crime. In addition, circumstantial evidence was provided at trial that implicated Grant. ECF No. 30 at 16. Ms. Bostic and Ms. Casey testified that they bought firearms for Grant that were used in the commission of the crime. Mr. Parker, a co-worker, Ms. Bostic, and Officer Campbell all provided additional testimony indicating Grant was involved in the crime. Based on the available record, the Court agrees with Judge Strawbridge's evaluation that the state court's factual findings are supported by the record established at Grant's trial and that Grant was not prejudiced by the non-disclosure. ECF No. 30 at 18-19. Therefore, the Court finds that the state court's rejection of this claim was not contrary to or an unreasonable application of federal law nor was it based on unreasonable findings of fact.

### B.  Ineffective Assistance of Counsel Claim

The Court finds all of Grant's ineffective assistance of counsel claims to be inexcusably procedurally defaulted and otherwise meritless.[3] Judge Strawbridge found that these claims were meritless and procedurally defaulted. ECF No. 30. In the Objections, Grant repeats his merit arguments regarding these claims, argues that the Report and Recommendation are unreasonable or misunderstand the circumstances, and argues that any procedural default should be excused under *Martinez*. ECF No. 33. The Court agrees with Judge Strawbridge.

1.  Police negligence and/or misconduct

---

[3] The Court agrees with Judge Strawbridge that the procedural default exception under *Martinez* does not excuse default in this case. ECF No. 30 at 24. The Court will still review Judge Strawbridge's determination that the claims further do not meet the standard of substantial to warrant relief.

Grant argues that his counsel provided constitutionally deficient representation for failing to object to various police misconduct or negligence occurring from arrest through trial. Grant contends that his counsel failed to object to his arrest for lacking probable cause; to the photo array lineup for being unduly suggestive and conducted without counsel present; to the police's failure to produce exculpatory fingerprint evidence; to the police's failure to conduct a gunshot residue test on his clothing; failed to object to Officer Roman's testimony; and to Officer Zirilli's testimony. ECF No. 30 at 24-25. First, this claim is procedurally defaulted. The Superior Court found that Grant failed to develop a legal argument in his appellate briefing to support this claim. Pa. R.A.P. 2119(a)-(e).

In addition, the Court does not find that the substance of this claim warrants relief. Both Judge Strawbridge and the Court's review of the record finds probable cause existed at the time of arrest, though the Court will not reiterate the circumstances that led to Grant's arrest, which are laid out in detail in Judge Strawbridge's Report and Recommendation. ECF No. 33 at 25. After considering the "totality of the circumstances" prior to Grant's arrest, the Court is convinced that there was probable cause. *See Wilson v. Russo*, 212 F.3d 781, 790 (3d Cir. 2000). Therefore, the Court does not find any failure on behalf of counsel relating to the arrest itself. The Court also does not find any failure of counsel to object to the photo array. In fact, Grant's counsel advocated against its use by moving to suppress the identification for the same reasons that Grant opposes its admission and again questioned its reliability at trial. The Court, therefore, agrees with Judge Strawbridge that there is no factual basis for asserting ineffective counsel regarding Grant's concerns over the photo array. ECF No. 30 at 28.

As to the alleged failure to provide exculpatory fingerprint evidence and gunshot residue testing, the police cannot fail to hand over evidence they never had in their position. The record

11

indicates that fingerprints from inside the vehicle were never analyzed because it was unusable, and the police never had possession of any fingerprint analysis that could rule out suspects. ECF No. 30 at 30. Similarly, gunshot residue testing, for various reasons, seems to have never been conducted. At the very least, Grant provides no evidence that testing was completed, and the results were withheld. ECF No. 30 at 31. Accordingly, it cannot be a failure of counsel for not obtaining evidence that does not exist. It should also be noted that counsel raised issues regarding the lack of fingerprint and gunshot residue testing during cross-examination at trial.

Finally, Grant contends that his counsel's failure to object to Officer Roman and Officer Zirilli's testimony warrants relief. That assertion is, again, unfounded and inapposite to the record before the Court. Grant's attorney did object to the misstatement made by Officer Roman (and later corrected it for the jury) and the attorney challenged the inconsistencies in Officer Zirilli's testimony on cross-examination and tried to recall him as a witness though the court would not allow it. ECF No. 30 at 33-34. Thus, all of Grant's regarding Officer Roman and Officer Zirilli's testimony were adequately addressed by counsel at trial. Therefore, the ineffective counsel claims relating to police misconduct or negligence do not warrant habeas relief.

### 2. Admission of identification evidence

Grant argues that his counsel provided constitutionally deficient representation for failing to challenge the admission of identification evidence. ECF No. 7 at 29. Grant believes that he should have had counsel present at the time of the photo array identification and that the circumstances were unduly suggestive. First, this claim is procedurally defaulted. The Superior Court found that Grant failed to develop a legal argument in his appellate briefing to support this claim. Pa. R.A.P. 2119(a)-(e).

Second, this claim fails on the merits. Counsel cannot be faulted for failing to litigate, or failing to properly litigate, a meritless issue. *See Carnavale v. Superintendent Albion SCI*, 654 F. App'x 542, 548-49 (3d Cir. 2016) (counsel not ineffective where state court found the underlying after-discovered evidence claim to be meritless). Federal law does not require counsel to be present for photo arrays. *See Richardson v. Superintendent Coal Twp. SCI*, 905 F.3d 750, 765 (3d Cir. 2018). However, Pennsylvania law does require that counsel be present for photo arrays, if it is conducted after arrest. *See Commonwealth v. Harrell*, 65 A.3d 420, 438 (Pa. Super. 2013). Grant claims he was constructively under arrest at the time of the photo array because he was "seized" by police at the hospital prior to his formal arrest. This assertion is not supported by the record. Grant was interviewed by Officer Campbell at the hospital as a victim of a shooting. He was not monitored or detained by police in any way at the time of the photo array. ECF No. 30 at 37. Outside of Grant's own self-serving statements, there is no evidence he was restricted by police at the hospital, either by handcuffs, police supervision, or otherwise. Accordingly, Grant was not entitled to have counsel present at the photo array and, therefore, the Court agrees with Judge Strawbridge's conclusion that counsel cannot be ineffective for failing to pursue an argument that was not applicable to Grant's case.

3. <u>Admission of Audio from 911 Call</u>

Grant argues that his trial and appellate counsel provided constitutionally deficient representation by failing to challenge the admission of Officer Williams 911 call recording. ECF No. 1 at 11. Judge Strawbridge determined that this claim was waived for failure to comply with the Pennsylvania Rules of Appellate Procedure, with no excuse offered for this default, and is not eligible for habeas review. ECF No. 30 at 22-23. The Court agrees that this claim is procedurally defaulted and not eligible for habeas relief.

4.  Ballistic Expert's Examination

Grant argues that his appellate counsel provided constitutionally deficient representation because they did not raise trial counsel's failure to object to the Commonwealth's omission of the ballistic expert's examination. ECF No. 1 at 11-12. Judge Strawbridge determined that this claim was waived for failure to comply with the Pennsylvania Rules of Appellate Procedure, with no excuse offered for this default, and is not eligible for habeas review. ECF No. 30 at 22-23. The Court agrees that this claim is procedurally defaulted and not eligible for habeas relief.

5.  Adequate Jury Instructions

Grant argues that his trial counsel provided constitutionally deficient representation because of a failure to request adequate jury instructions on five issues. ECF No. 1 at 12-14. In the Report and Recommendation, Judge Strawbridge lists the five instructions that Grant claims were either insufficient or omitted at trial due to his counsel's ineffectiveness. ECF No. 30 at 39. The Court will provide a brief summary of the allegedly inadequate jury instructions here: (1) reasonable doubt instruction; (2) potentially exculpatory evidence instruction; (3) Officer Roman's testimony instruction; (4) prior inconsistent statement instruction; (5) Officer Zirilli's testimony instruction. First, this claim is procedurally defaulted. The Superior Court found that Grant failed to develop a legal argument in his appellate briefing to support this claim. Pa. R.A.P. 2119(a)-(e).

Second, the Court finds this claim is without merit. While Judge Strawbridge provides a detailed analysis of Grant's challenge to each instruction, the Court does not find it necessary to go into such detail here because the Court fully adopts and credits Judge Strawbridge's thorough evaluation of the jury instructions claim. ECF No. 30 at 40-50. The Court views all these

challenges in the context of the charge provided to the jury, not the isolated word here or there. *See Boyde v. California*, 494 U.S. 370, 378 (1990). The Court also employs an understanding that trial counsel may strategically choose when to object and when to accept an instruction and it is not the Court's role to evaluate an attorney's strategy, particularly when the impact of the decision is negligible. As to the reasonable doubt instruction, the trial court provided a one-word deviation from the standard jury instruction and followed it with a lengthy, accurate explanation of reasonable doubt. The Court finds that slight alteration had a negligible, if any, effect on the proceedings and certainly does not constitute prejudice due to counsel's lack of objection.

The Court also finds Grant's requested instructions were unnecessary. Judge Strawbridge noted appropriately that Pennsylvania courts have held that jury instructions are only appropriate if they are supported by the evidence. *See Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1257 (Pa. Super. 2014); *Commonwealth v. M. Baker*, 963 A.2d 495, 506 (Pa. Super. 2008) ("[T]he relevant inquiry for this Court […] is whether such charge was warranted by the evidence in the case.") ECF No. 30 at 43. The Court has already discussed the fingerprinting and gunshot residue evidence and found it likely never existed, and thus the Court finds an additional instruction regarding potential exculpatory evidence was unnecessary. *See supra* section IV.B.1. Similarly, the Court finds a curative instruction was not necessary to address Officer Roman and Officer Zirilli's testimony. While Officer Roman mistakenly referred to another individual as "Defendant" at Grant's trial, Grant's counsel immediately objected to the misstatement and clarified it during cross-examination. ECF No. 19 at 10, ECF No. 30 at 45-46. Grant further raises alleged credibility issues with Officer Zirilli's testimony and general participation in the investigation and trial, but no curative instruction was necessary because the state court did in fact issue a lengthy instruction regarding witness reliability. ECF No. 30 at 49. Finally, Grant

claims that an instruction should have been given for prior inconsistent statements because of the inconsistency in the victim's description of his attackers. ECF No. 7 at 38. Again, the Court must point out that the state court did provide a jury instruction on the issue of witness reliability, which included as a factor for credibility the "consistency or inconsistency of his or her testimony [.]" ECF No. 30 at 47. Grant provides no explanation for how he was prejudiced by not including redundant instructions or how counsel was ineffective for failing to request an instruction the court chose to provide on its own. Thus, this requested instruction was unnecessary.

Overall, Grant has failed to demonstrate his counsel's conduct was unreasonable or that Grant was prejudiced by the provided trial instructions such that his trial would have been different with his suggested instructions. Therefore, these jury instruction claims do not warrant habeas relief.

6.   Prosecutorial Misconduct

Grant argues that his trial counsel provided constitutionally deficient representation for failure to object or request a mistrial based on the prosecutor's conduct at trial. ECF No. 7 at 39-54. Grant lists at length various instances in which he believes the prosecutor misbehaved in ways that should have been addressed by his counsel. First, this claim is procedurally defaulted. The Superior Court found that Grant failed to develop a legal argument in his appellate briefing to support this claim. Pa. R.A.P. 2119(a)-(e).

Furthermore, the Court finds that these complaints are based on standard conduct for trial attorneys and are mischaracterized by Grant. While a defendant may not like the way the government presents a case against him or her, it is the prosecutor's job to present evidence to

16

the jury from the government's perspective and provide a persuasive demonstration of the facts and expert analysis to build a record. The prosecutor may take liberty in the presentation of its case and chief. *United States v. Werme*, 939 F.2d 108, 117 (3d Cir. 1991). The government, of course, must still allow the jury to develop its own view of the evidence and not insinuate that the prosecutor has personal knowledge beyond the evidence presented, but may present its own views of the evidence and any reasonable inferences and conclusions that the evidence allows. *Rollins v. Horn*, 2005 WL 1806504, at *14 (E.D. Pa. July 26, 2005) (internal citation omitted); *United States v. Zehrbach,* 47 F.3d 1252, 1266-67 (3d Cir. 1995).

In the context of the trial as a whole, the Court evaluates whether a prosecutor's statements were so prejudicial that they made the trial unfair and prevented due process. *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986). The Court does not find that the prosecutor's conduct or statements made at trial were, considering the totality of the record, prejudicial to Grant. The Court will dispense with a lengthy recitation of each instance of misconduct raised by Grant, as these factual details have been thoroughly identified and reviewed by Judge Strawbridge. ECF No. 30 at 52-74. Instead, the Court will provide its determination for each category of Grant's claims without a detailed recitation of each challenged statement.

a. *Speculative Statements or Outside the Record*

The Court finds no prejudicial instances of prosecutor speculation or insinuation of information beyond the record. Grant challenges a question asked by the prosecutor about the 911 call during re-direct examination of Officer Zirilli, which was well within the scope of allowable questioning of a specific, relevant piece of evidence admitted at trial. The topic was initially broached by defense counsel on cross-examination, giving the prosecutor an opportunity to ask about the 911 call on re-direct. Grant also claims that the prosecutor's closing argument

17

was improper for providing a theory on the absence of Grant's blood in the getaway car. However, defense counsel also presented its own theory during closing about the lack of blood in the car and it is up to the jury to determine which of the alternative theories is supported by the evidence. Attorneys are also allowed to make comments on how probative they think evidence is, especially if it is based on testimony provided at trial. The prosecutor's statement in closing that gun residue tests are often inconclusive was a direct reference to prior testimony and appropriately made.

Finally, Grant points to a statement in the prosecutor's closing explaining Officer Zirilli's whereabouts after the crime, which was not part of his testimony nor was it properly introduced at any other time during trial. However, this minor comment does not rise to the level of prejudice, nor does it come anywhere near a denial of due process. Judge Strawbridge was quick to point out that the court gave jury instructions stating that closing arguments are not evidence to consider during deliberations, thus any possible prejudice from the prosecutor's comment during closing argument was cured by the court's instruction. ECF No. 30 at 55-56. Therefore, the statements made by the prosecutor were either proper or had no effect on the outcome of Grant's trial. The Court does not accept that Grant's claim would be deemed "substantial" in accordance with *Martinez*. This claim does not afford Grant habeas relief.

### b. *Vouched for Government Witness Testimony*

Grant claims that the prosecutor improperly vouched for the credibility of a witness during closing argument. ECF No. 7 at 43-44. Prosecutors may comment on the reliability of witnesses as long as it is based on something observable or known at trial. *See United States v. Weatherly*, 525 F.3d 265, 271 (3d Cir. 2008); *United States v. Rivas*, 493 F.3d 131, 137 (3d Cir. 2007). There are two elements of improper vouching: "(1) the prosecutor must assure the jury

that testimony of a Government witness is credible; and (2) this assurance is based on either the prosecutor's personal knowledge, or other information not contained in the record." *United States v. Lee*, 612 F.3d 170, 195 (3d Cir. 2010) (quoting *United States v. Walker*, 155 F.3d 180, 187 (3d Cir. 1998)). The prosecutor's statements in closing regarding Mr. Doan's familiarity with guns and Ms. Casey's feelings were both supported by testimony given at trial. ECF No. 30 at 57-59. The prosecutor did not engage in any misconduct because the assurances of credibility were based on the record.

Only one of Grant's allegations here qualify as improper vouching. The prosecutor did tell the jury that the police officers testified truthfully, an evaluation based solely on the prosecutor's belief that the police are reliable and not based on the record at trial. Yet the Court's analysis does not stop there. Grant cannot merely show a single instance of improper vouching as a ground for habeas relief. There must also be a showing of prejudice based on counsel's failure to object to that statement and the Court finds no prejudice here. Closing arguments are not evidence, as the jury instructions made clear, and the Court presumes that the jury deliberated in accordance with the court's instructions. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Commonwealth v. Laird*, 988 A.2d 618, 629 (Pa. 2010). The Court cannot find that this single instance of improper vouching, in light of the curative instruction and the evidence presented at trial, impacted the outcome of the trial. Therefore, the Court does not accept that Grant's claim would be deemed "substantial" in accordance with *Martinez* and it does not warrant habeas relief.

c.   *False Testimony Not Corrected*

Grant claims there were two instances where his counsel failed to correct false testimony or allowed the prosecutor to provide misleading testimony during trial. ECF No. 7 at 45. Grant

claims that the prosecution violated his rights in allowing the false testimony under *Napue v. Illinois*, 360 U.S. 264 (1959). A violation of *Napue* occurs when: "(1) [the witness] committed perjury; (2) the government knew or should have known of his perjury; (3) the testimony went uncorrected; and (4) there is any reasonable likelihood that the false testimony could have affected the verdict." *Lambert v. Blackwell,* 387 F.3d 210, 242 (3d Cir. 2004). Grant asserts these two *Napue* violations as ineffective assistance of counsel claims, alleging that his attorney was deficient for failing to address these issues at trial.

None of the testimony Grant claims to be false satisfy the *Napue* criteria. First, Grant points to inconsistent testimony between Mr. Doan and Officer Zirilli but inconsistent testimony is not the same as committing perjury. Further, the inconsistent testimony was pursued by the prosecutor and other attorneys at trial during examination so it cannot be said that the testimony went uncorrected. Second, Grant again raises the issue of Officer Roman's testimony, which the Court agrees was inaccurate. *See supra* IV.B.5 at 14. However, the Court also found that Officer Roman's misstatement did not prejudice Grant. Considering the *Napue* criteria, this misstatement did not have a "reasonable likelihood" of affecting the verdict because numerous witnesses testified about the same information in an accurate manner. ECF No. 30 at 62. Grant's counsel further handled the misstatement effectively by objecting immediately to the testimony and addressing it on cross-examination. Thus, the Court finds no *Napue* violation, no ineffective counsel related to inaccurate testimony, and no prejudice against Grant impacting the outcome of the trial. Therefore, the Court does not accept that Grant's claim would be deemed "substantial" in accordance with *Martinez* and it does not warrant habeas relief.

*d.  Denigrating and Inflammatory Statements*

Grant claims that his counsel was ineffective for failing to object to disparaging statements made by the prosecutor during closing argument. ECF No. 7. There are four statements challenged by Grant for this reason. Judge Strawbridge concluded that most of the statements challenged by Grant were proper and, while some may have been improper, even the few improper adjectives did not create prejudice against Grant nor did counsel's failure to object to them show a "reasonable probability" of affecting the outcome of the trial. ECF No. 30 at 64-65. Upon consideration of the statements in the prosecutor's closing argument that Grant challenges as denigrating or inflammatory towards the defense, the Court agrees with Judge Strawbridge's conclusion.

Two of the statements were made by the prosecutor in direct response to a narrative set forth by defense counsel in their closing arguments. Grant's counsel questioned the credibility and motivations of a number of the witnesses called by the government during trial. The prosecutor simply responded to those theories, which is well within the scope of closing arguments. The other two statements – rather adjectives describing the defense as "offensive" and "arrogant" for making certain arguments – were improper. A prosecutor "may not express his personal opinion regarding a defendant's guilt, credibility, or trial strategy." *Commonwealth v. Gilman*, 368 A.2d 253, 258 (1977). Even so, Grant continues to fail to meet his burden in establishing that these isolated instances of impropriety rise to the level of prejudice. Two improper words scattered throughout closing argument, which is not itself evidence, is not enough to overcome the jury's evaluation and determination based on the evidence against Grant. There is no showing these words tainted the trial. Grant also fails to show his counsel's lack of objection, even though objections during closing arguments are not common practice, constitutes Constitutionally deficient counsel. Therefore, the Court does not accept that Grant's

21

claim would be deemed "substantial" in accordance with *Martinez* and it does not warrant habeas relief.

### e.   Misrepresentations

Grant also claims that the prosecution presented misrepresentations and lies at the preliminary hearing, motion *in limine* hearing, and during trial. ECF No. 7 at 49. His counsel, Grant asserts, should have objected to this false information or requested a mistrial. Again, Judge Strawbridge provided a detailed recitation of the related facts, and the Court will not reiterate the specifics here. ECF No. 30 at 66-69.

As to the alleged misrepresentations at the preliminary trial, no analysis of the statement or counsel's response is necessary at this stage because the error was rendered moot following the full jury trial held in this case. *See Miller v. Lamas*, 2012 WL 761999, at *5 (W.D. Pa. Feb. 15, 2012), *report and recommendation adopted*, 2012 WL 750908 (W.D. Pa. Mar. 7, 2012). The jury's decision exists separate from the preliminary hearing and thus there is no reason to believe anything occurring at that stage of the matter affected the jury's consideration of the evidence at trial. Similarly, the Court cannot find any prejudice based on the alleged misrepresentations made during the pre-trial motion hearing. The prosecution represented information as she was told by detectives. The motion court ordered that the government must produce the underlying evidence conveying that information before trial. Defense counsel objected appropriately that failure to produce those documents could be a *Brady* violation. Days later, however, the prosecutor did provide the pertinent records and read them into the record in court. Accordingly, there is no indication the prosecutor lied, as she made it clear she was personally unaware of the information and simply relaying what detectives told her, and, regardless, the records were provided to defendant by the start of trial. Particularly since defense counsel preserved its

objection regarding the production of this evidence, which was in fact produced, the Court cannot possibly find any issue with the prosecutor or defense counsels' handling of this information and materials.

Finally, Grant raises concern over four statements made by the prosecutor during trial, all of which were either plainly supported by the evidence or objected to by Grant's counsel. Three of the statements were based on the record presented at trial and were all statements or inferences the government can properly make to persuade the jury to enter a verdict of guilty. Just in the same way a defense attorney can cite to evidence in presenting his or her arguments, the prosecutor can, and should, provide a summation of the evidence to support the government's position. The Court need not evaluate the basis for the fourth statement because Grant's counsel objected and thus provided adequate counsel regardless. Therefore, the Court finds Grant is not entitled to habeas relief on this claim.

### f.   Surprise Expert Testimony

Grant's last claim regarding his counsel's failure to object to prosecutorial misconduct is based on lay witness testimony that was allegedly used by the government as expert testimony without objection or impeachment from Grant's counsel. ECF No. 7 at 55. Officer Jaconi, Detective Marano, and Detective Tighe offered the lay testimony that Grant asserts was really admitted as scientific truth. After evaluating the testimony at issue, the Court finds all these individuals testified as to their own knowledge and perception not as experts. Pa.R.E 701. They each discussed their own professional responsibilities and policies or procedures employed by the police department during investigations. *See Commonwealth v. Valle*, 2015 WL 6746576, at \*4 (Pa. Super. July 24, 2015); *see also Commonwealth v. Fudge*, 213 A.3d 321, 329 (Pa. Super. 2019). This is standard information provided by officers or detectives involved in the

23

investigation of a crime and within the scope allowed by the courts as lay testimony. The Court cannot find ineffective counsel because this is a meritless objection. Thus, the claim does not afford Grant habeas relief.

7.   <u>Post-Sentence Motions on Petitioner's Sentence</u>

Lastly, Grant claims that his counsel provided constitutionally deficient representation by failing to challenge his "excessive" sentence. ECF No. 7 at 57. First and foremost, this claim is procedurally defaulted. The Superior Court found that Grant impermissibly attempted to raise this claim for the first time in his Rule 1925(b) statement and, therefore, it is waived for consideration on appeal and dismissed for failure to comply with state appellate procedure. *See* Pa. R.A.P. 302(a); *see also Rolan v. Coleman*, 680 F.3d 311, 317-18 (3d Cir. 2012). Even if the Court entertained this claim on the merits, which we do not, the sentencing judge thoroughly explained its reasoning for an upward departure, which explicitly took into account the presentence report, mental health evaluation and other mitigating factors. *See Commonwealth v. Walls*, 926 A.2d 957, 967 (Pa. 2007). Since the record at sentencing acknowledged the positive and negative factors considered in determining Grant's sentence, there is no reason counsel was required to file post-sentence motions asserting mitigating factors already evaluated by the sentencing judge. Therefore, counsel was not ineffective for failing to file a meritless motion and this claim is not entitled to habeas relief.

**C.  Petitioner's Request for Lineup**

Grant claims that the court erred when the magistrate judge denied his request for an in-person lineup because prosecutor incorrectly stated that Grant was arrested at the scene of the crime. ECF No. 7 at 32-33. First, this claim is procedurally defaulted. The Superior Court

declined to address Grant's claim because the issue was non-cognizable under the PCRA. 42 Pa.C.S. § 9543(a)(2)-(4); 42 Pa.C.S. § 9544(b).

In addition, Grant does not show that the preliminary hearing court's denial was unreasonable or contrary to federal or Constitutional law. In order to succeed in a petition for habeas relief, Grant must allege that the state court committed specific violations of federal law. *See* 28 U.S.C. § 2254(d). Grant has not demonstrated any violation here. The preliminary hearing court had discretion to either grant or deny the request for an in-person lineup. ECF No. 7 at 33. The Court agrees with Judge Strawbridge that there is no constitutionally protected right to a lineup upon request. ECF No. 30 at 39. Therefore, Grant is not entitled to habeas relief for challenging the prior magistrate judge's discretion in denying an in-person lineup.

## V.    CONCLUSION

The Court declines to issue a certificate of appealability. "A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. 2253(c)(2). Grant has not shown that "reasonable jurists" would find this Court's assessment of the constitutional claims "debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). No certificate of appealability will issue.

Because we find that none of Grant's rights were violated and his claims lack merit, we **DENY** his petition and his objections in their entirety, and we **ADOPT** Judge Strawbridge's reasoned Report and Recommendation. An appropriate order follows.

**BY THE COURT:**

/s/ Chad F. Kenney

_____

**CHAD F. KENNEY, JUDGE**